# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CITIZENS FOR RESPONSIBILITY      :
AND ETHICS IN WASHINGTON,      :
      :
    Plaintiff,      :
      :
  v.      :     **Civil Action No. 11-754(GK)**
      :
U.S. DEPARTMENT OF JUSTICE,      :
      :
    Defendant.

## <u>MEMORANDUM OPINION</u>

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brings this action against Defendant U.S. Department of Justice ("DoJ"), challenging its denial of Plaintiff's requests under the Freedom of Information Act ("FOIA" or "the Act"), 5 U.S.C. § 552. Plaintiff's FOIA requests sought materials relating to DoJ investigations of U.S. Representative Don Young involving allegations of bribery and other illegal conduct.

This matter is presently before the Court on Defendant's Motion for Summary Judgment ("Def. Mot.") [Dkt. No. 10] and Plaintiff's Cross-Motion for Partial Summary Judgment ("Pl. Mot.") [Dkt. No. 12]. Upon consideration of the Motions, Oppositions, and Replies, the entire record herein, and for the reasons set forth below, Defendant's Motion for Summary Judgment is **denied** and Plaintiff's Cross-Motion for Partial Summary Judgment is **granted**.

## I.    PROCEDURAL BACKGROUND[1]

On January 24, 2011, Plaintiff submitted identical FOIA requests to DoJ component agencies, the Federal Bureau of Investigation ("FBI"), the Executive Office for United States

---

[1]  The facts set forth herein are drawn from the parties' statements of material facts submitted pursuant to Local Rule 7(h), the briefs, and the evidence in the record.

Attorneys ("EOUSA"), and the Criminal Division of DoJ ("CRM"). Each of the three requests sought "all records related to investigations conducted by DoJ and the Federal Bureau of Investigation ("FBI") of Rep. Don Young (R-AK) that are not covered by grand jury secrecy . . . , including but not limited to DoJ's decision not to bring criminal charges against him." Defendant's Statement of Material Facts Not in Dispute ¶¶ 1,8,16 ("Def. Stmt of Facts")[Dkt. No. 10-2].

On January 25, 2011, the FBI issued its response to Plaintiff's FOIA request. Id. ¶ 9.  The EOUSA responded on February 1, 2011, and the CRM responded after the filing of the present litigation. Id. ¶¶ 2, 18; Def. Mot. 9.  Without conducting a search for the requested documents, all three entities categorically denied Plaintiff's requests pursuant to FOIA Exemptions 6 and 7(C). Def. Stmt. of Facts, ¶¶ 2, 9; Declaration of Kristin Ellis ("Ellis Decl.") [Dkt. No. 10-3].  As stated in the FBI's denial:

> You have requested records concerning a third party . . . . Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records. Since you have not furnished a Certificate of Identity form, proof of death, or public justification for release, the release records concerning a third party would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C. § 552a. These records are also generally exempt from disclosure pursuant to section (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. § 552.
>
> If requested, we will conduct a search for any public records maintained in our files, such as court records and news clippings, without the express authorization of the third party, proof of death, or public justification for release provided the subject is of sufficient notoriety.

Def. Stmt. of Facts ¶ 9.

The FBI and EOUSA also notified Plaintiff of its right to appeal the decision to DoJ's Office of Information Policy ("OIP"). Id. ¶¶ 3, 10. Plaintiff appealed the FBI and EOUSA denials on February 7, 2011, but filed the present lawsuit before receiving a decision from OIP.[2] Id. ¶¶ 4, 6, 11, 14.

## II.   ANALYSIS

### A.   Statutory Framework

The courts have long recognized that FOIA's "basic purpose reflect[s] a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language." Dep't of Air Force v. Rose, ("Rose") 425 U.S. 352, 360-61 (1976) (citation and internal quotations omitted). See also Multi Ag Media LLC v. Dep't of Agriculture ("Multi Ag Media"), 515 F.3d 1224, 1227 (D.C. Cir. 2008). In other words, "[a]t all times, courts must bear in mind that FOIA mandates a 'strong presumption in favor of disclosure.'" Nat'l Ass'n of Home Builders v. Norton, 309 F.3d 26, 32 (D.C. Cir. 2002) (quoting U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991)). Because FOIA's "basic policy that disclosure, not secrecy, is the dominant objective of the Act," Rose, 425 U.S. at 361, FOIA's exemptions "must be narrowly construed." Id.

The Act "requires agencies to comply with requests to make their records available to the public, unless the requested records fit within one or more of nine categories of exempt material." Oglesby v. U.S. Dep't of the Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996). In narrowly construing the applicability of the FOIA exemptions, it is essential to remember that the Act's central purpose is "to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check

---

[2] On June 7, 2011, OIP notified Plaintiff that it had closed its appeal of the FBI denial due to the commencement of the present litigation. Def. Stmt. of Facts ¶ 14. The record does not indicate whether OIP ruled on Plaintiff's appeal of the EOUSA's denial.

against corruption and hold the governors accountable to the governed." <u>NLRB v. Robbins Tire & Rubber Co.</u>, 437 U.S. 214, 242 (1978).  In order to further that purpose, federal agencies claiming applicability of any of FOIA's exemptions bear the burden of providing a "'relatively detailed justification' for assertion of an exemption, and must demonstrate to a reviewing court that records withheld are clearly exempt." <u>Birch v. U.S. Postal Service</u>, 803 F.2d 1206, 1209 (D.C. Cir. 1986) (quoting <u>Vaughn v. Rosen</u> ("<u>Vaughn</u>"), 484 F.2d 820, 827-28 (D.C. Cir. 1973)).

To satisfy that requirement, our Court of Appeals established, in <u>Vaughn v. Rosen</u>, a procedural framework for evaluating exemption claims which directs exactly how agencies must proceed when seeking to deny disclosure of requested documents.  In <u>Mead Data Central, Inc. v. Department of the Air Force</u>, 566 F.2d 242, 251 (D.C. Cir. 1977), the Court spelled out the <u>Vaughn</u> requirement that "when an agency seeks to withhold information, it must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of withheld documents to which they apply."  Since <u>Vaughn</u> and <u>Mead</u> were decided, the usual practice has been for agencies to submit an affidavit (referred to as the "<u>Vaughn</u> Index") specifically identifying each document they seek to withhold and/or the precise redaction of each document they wish to make, along with "a relatively detailed justification" for their assertions.  Thereafter, a plaintiff can respond to the justification offered by the agency and, most importantly, the court can assess on a document-by-document basis, as described in the <u>Vaughn</u> Index, whether the Government is justified in withholding the listed material under the specific FOIA exemption claimed.  As our Court of Appeals has said in <u>Kimberlin v. U.S. Department of Justice</u>, 139 F.3d 944, 950 (D.C. Cir. 1998),

> The purpose of a *Vaughn* index is to permit adequate adversary testing of the agency's claimed right to an exemption, and those who contest denials of FOIA requests--who are, necessarily, at a disadvantage because they have not seen the withheld documents--can generally prevail only by showing that the agency's *Vaughn* index does not justify withholding information under the exemptions invoked.

(quoting, Schiller v. NLRB, 964 F.2d 1205, 1209 (D.C. Cir. 1992)).

In short, the procedures established in Vaughn and Mead have created a system under which the agency has a full opportunity to make its claim for withholding information, the requester has a full opportunity to challenge those claims, and the court -- not the agency-- makes the final decision as to the legality of the Government's claims.  It is fair to say that over the years, this procedure has served all parties -- and above all the American public -- well.

It is true that under certain circumstances, often involving Exemptions 6 and 7(C), "rules exempting certain categories of records from disclosure [have] sometimes permitted, even encouraged," such categorical rules as "a workable manner of meeting FOIA obligations."  Nation Magazine, Wash. Bureau v. U.S. Customs Servs. ("Nation Magazine"), 71 F.3d 885, 893 (D.C. Cir. 1995).  However, the Court of Appeals has made it clear that "[t]here are limits, though, to when categorical rules may be employed."  Id.  Such categorical denials are only appropriate "when the range of circumstances included in the category 'characteristically support[s] an inference' that the statutory requirements for exemption are satisfied . . . ."  Id. (citation and internal quotations omitted).

This case presents one issue:  whether the Department of Justice and its component entities acted lawfully in "categorically" denying Plaintiff's FOIA requests.

### B.     The Balancing of Privacy Interest Versus Public Interest

Plaintiff argues that Defendant was incorrect in categorically denying its FOIA requests and should, instead, have followed the procedure outlined in <u>Vaughn</u> and <u>Mead</u> by conducting a search for responsive documents and providing a <u>Vaughn</u> index for any withheld items.  Defendant argues that it was permitted to categorically refuse Plaintiff's requests because Rep. Young has a privacy interest in the requested records and Plaintiff has failed to articulate a public interest that overrides his privacy interest.

FOIA Exemption 6, upon which the Government relies, applies to "personnel or medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6). FOIA Exemption 7(C), upon which the Government also relies, applies to "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(7)(C).

Although the privacy language in Exemption 7(C) is broader than the privacy language in Exemption 6, the courts employ a similar analysis to decide whether a FOIA request may be categorically denied on either ground. <u>U.S. Dep't of Justice v. Reporters Comm. for Freedom of the Press</u> ("<u>Reporters Comm.</u>"), 489 U.S. 749, 756-62 (1989); <u>Judicial Watch v. U.S. Dep't of Homeland Sec'y</u>, 598 F. Supp. 2d 93, 97 n. 1 (D.D.C. 2009) ("The privacy inquiries under Exemptions 6 and 7(C) are 'essentially the same'") (quoting <u>Judicial Watch, Inc. v. U.S. Dep't of Justice</u>, 365 F.3d 1108, 1125 (D.C. Cir. 2004)).   Under both exemptions, the court must first assess whether the third-party has more than a *de minimis* privacy interest in the requested material.  <u>ACLU v. U.S. Dep't of Justice</u>, 655 F.3d 1, 12 (D.C. Cir. 2011).  If such an interest exists, the court must

then determine whether the third-party's privacy interest is outweighed by the public interest in disclosure.  Id. at 6.

As already noted, Plaintiff seeks records relating to DoJ's investigation of Rep. Don Young concerning allegations of bribery and other illegal conduct.   The allegations and resulting investigations conducted by DoJ and the FBI which Plaintiff referenced in its request, grew out of newspaper articles in 2007 raising questions regarding the role played by Rep. Young in what became known as the "Coconut Road Earmark."  See Pl.'s Exhs. A and B [Dkt. Nos. 11-2, 11-3].[3]

Those reports indicated that in February of 2005, Rep. Young, who was then serving as Chair of the House of Representatives Transportation Committee, traveled to Florida to discuss transportation projects including a $10 million expansion of Interstate 75 that would have connected that freeway to Coconut Road.  The news reports indicated that during that visit, Rep. Young attended a fund raiser in his honor organized by a real estate developer who owned more than 4,000 acres of land along Coconut Road, thus standing to gain financially from the project.  In the Fiscal Year 2006 Transportation Bill, introduced and supported by Rep. Young, $10 million was earmarked for certain improvements to I-75 in Florida.

After the House and Senate approved the Bill, but before the President signed it into law, the original language was deleted and the phrase "Coconut Rd. interchanges I-75/Lee County" was inserted.[4]

---

[3] In its Cross-Motion for Summary Judgment, Plaintiff has cited, and quoted from, numerous articles on this subject.

[4] According to one news report, "someone with access to the bill deleted the earmark's original language that would have given $10 million more for widening and improvements to Interstate 75 and attached the phrase 'Coconut Rd. interchange I-75/Lee County . . . ."  Julio Ochoa, Report
(continued...)

In response to the controversy, in 2008 Congress directed DoJ to conduct an investigation into the earmark allegations about the Coconut Road project.  During the Senate debate on this legislation, Sen. Harry Reid said:

> . . . The facts are not yet all known, as I have just said, but if these allegations -- or some of them -- are true, this is one more example of the corruption that permeated the Congress in recent years.  We have two Members of Congress who have gone to prison.  We have staff members who have gone to prison.  Some are on probation and have pled guilty.  So it is fair to say there was a lot of corruption in recent years.

154 CONG. REC. 3106-03, 53115 (Apr. 17, 2008) (remarks of Sen. Reid).

When the House of Representatives considered the Coconut Road investigation provision, Rep. Young said, "I am going to go through a chronological order of what has occurred about the issue of Coconut Road," and then gave a detailed explanation of his actions.  154 CONG. REC. H-2867-03, H2282-H-2283 (Apr. 30, 2008) (remarks of Rep. Young).  After saying that "This has always been a good project," he concluded with the following comments:

> So why am I talking about this, other than to give the chronological order of events that occurred?  Well, it's very easy.  I have been the subject of much innuendo concerning my intent and motivation of this project.  These accusations have little, if any, connection with what actually occurred. . . .  After all the accusations and rumors about [the FY 2006 transportation] bill, I hope this sets the record straight. . . .

Id.

---

[4](...continued)
Shows Someone Edited Federal Transportation Bill, NAPLES DAILY NEWS, Aug. 8, 2007, Pl.'s Exh. B.  The report goes on to explain that "[t]he language within the earmark was changed during a process called 'bill enrollment,' when technical corrections are made to legislation before being sent to the president."  Id.

The Coconut Road earmark investigation provision was enacted as section 502 of the Safe,

Accountable, Flexible, Efficient Transportation Equity Act:  A Legacy for Users (SAFETEA-LU)

Technical Corrections Act of 2008, P.L. 110-244 (June 6, 2008), and reads as follows:

> SEC. 502.  DEPARTMENT OF JUSTICE REVIEW
>
> Consistent with applicable standards and procedures, the Department of Justice shall review allegations of impropriety regarding item 462 in section 1934(c) of Public Law 109-59 to ascertain if a violation of Federal criminal law has occurred.

On August 4, 2010, the congressional office of Rep. Young issued the following press

release:

> A Statement From the Office of Congressman Young
>
> Congressman Young's legal team has been notified that after full cooperation from the Congressman, the Public Integrity Section of the Department of Justice has concluded their investigation and declined prosecution of Congressman Young.

Pl. Exh. F [Dkt. No. 11-7].

### 1.     Rep. Young Has a Cognizable, Albeit Diminished, Privacy Interest in the Requested Documents

The first step of the balancing test under both Exemptions 6 and 7(C) is to determine whether

there is a privacy interest in the material sought.  In Reporters Comm., the Supreme Court explained

that "[p]rivacy is the claim of individuals . . . to determine for themselves when, how, and to what

extent information about them is communicated to others."  489 U.S. at 764 n. 16 (citations and

quotations omitted).  For a privacy interest to be "cognizable" under FOIA it must be "substantial."

However, "use of the word substantial in this [FOIA] context, means less than it might seem.  A

substantial privacy interest is anything greater than a *de minimis* privacy interest."  Multi Ag Media,

515 F.3d at 1229-30.   See Consumers' Checkbook Ctr. for Study of Servs. v. U.S. Dep't of Homeland Sec'y ("Consumers' Checkbook Ctr."), 554 F.3d 1046, 1050 (D.C. Cir. 2009).  Thus, in this Circuit, any privacy interest greater than *de minimis* constitutes a "substantial privacy interest" which is "cognizable" under FOIA.

While  it is true that Government officials may have a somewhat diminished privacy interest "they do not surrender all rights of personal privacy when they accept a public appointment." Quinon v. F.B.I., 86 F.3d 1222, 1230 (D.C. Cir. 1996) (citation and internal quotations omitted). Ordinarily, anything that would associate a third party with a criminal investigation would establish that individual's privacy.   Reporters Comm., 489 U.S. at 772-73.   Nor is there any doubt that "individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity."  Stern v. FBI, 737 F.2d 84, 91-92 (D.C. Cir. 1984).  This may be especially true for politicians who rely on the electorate to return them to public office.  For this reason, it cannot be said that Rep. Young does not have even a *de minimis* or "cognizable" privacy interest under FOIA.

However, those very important general principles of privacy have far less force in this case because the information -- namely, the fact that DoJ conducted an investigation of activities involving Rep. Young -- is already a matter of public record.  Rep. Young has himself confirmed in a press release issued by his Congressional office that there was an investigation into his activities, and has recognized that he has "been the subject of much innuendo concerning [his] intent and motivation of this project [referring to the Coconut Road Earmark]."  154 CONG. REC. H-2867-03, H2882 (Apr. 30, 2008) (Remarks of Rep. Young).  One can have no privacy interest in information that is already in the public domain, especially when the person asserting his privacy is himself responsible for placing that information into the public domain.

-10-

In <u>Kimberlin</u>, the Court of Appeals addressed a factual situation quite similar to the present case.  An Assistant United States Attorney acknowledged that he had been the subject of an internal ethics investigation and that he had been punished for unethical conduct.  <u>Kimberlin</u>, 139 F.3d at 946-47.  On appeal, the Circuit recognized that

> [The AUSA's] statement to the press undoubtedly does diminish his interest in privacy:  the public already knows who he is, what he was accused of, and that he received a relatively mild sanction.

<u>Id.</u> at 949.

In this case, the Congressman's statement to the press, as well as other statements he made on the floor of the House of Representatives, clearly "diminish his interest in privacy."  While the Government cites <u>Kimberlin</u> in support of its position, neither the procedural posture nor the substantive holding of <u>Kimberlin</u> support its position.  At the District Court level, the Government first refused "either to confirm or to deny that such an investigation had taken place," <u>id.</u> at 947, but ultimately did conduct a search, released a small amount of material, and withheld the remainder of the material sought.  In other words, <u>Kimberlin</u> did not involve a categorical denial of documents.  Indeed, the Government agreed in that case that the balancing of interests "should be done on a case-by-case basis rather than categorically."  <u>Id.</u> at 949.

On appeal, the Court of Appeals held that "[i]n order to withhold an entire file pursuant to Exemption 7(C), the Government must show that disclosure of any part of the file" would violate the subject's privacy, and that it "must make that showing in its <u>Vaughn</u> Index and in such affidavits as it may submit therewith."  <u>Id.</u> at 950.  The Court squarely rejected DoJ's contention that it should be allowed a categorical withholding of the investigative file and refused to accept the Department's

-11-

sweeping claim without "[providing] more specification of the types of material in the file." Id. See Judicial Watch v. U.S. Dep't of Homeland Sec'y, 598 F. Supp. 2d at 96 (holding that the "agency must, for each record, conduct a particularized assessment of the public and private interest at stake.") (emphasis added).[5]   In sum, given the rather narrow meaning of "substantial cognizable interest" in this Circuit, and given the fact that Rep. Young has more than a merely *de minimis* interest in his privacy, the Court concludes that he does have a substantial -- although much diminished -- privacy interest in withholding the documents Plaintiff seeks.

>    **2.     There Is a Substantial Public Interest in Disclosure of the Requested Records**

The second step of the balancing test under Exemptions 6 and 7(C) is to determine whether there is a substantial public interest in releasing the requested documents.  It is difficult to understand how there could not be a substantial public interest in disclosure of documents regarding the manner in which DoJ handled high profile allegations of public corruption about an elected official.  Clearly, the American public has a right to know about the manner in which its representatives are conducting themselves and whether the government agency responsible for investigating and, if warranted, prosecuting those representatives for alleged illegal conduct is doing its job.  "The public interest that must be weighed in this balance is the extent to which disclosure advances 'the basic purpose of the Freedom of Information Act to open agency action to the light of public scrutiny.'" ACLU, 655 F.3d at 6 (quoting Reporters Comm., 489 U.S. at 722).

---

[5]   It is true that once the Agency did submit its Vaughn Index, the District Court accepted its arguments and ruled that DoJ properly withheld the information sought under Exemption 7(C). Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec'y, 736 F. Supp. 2d 202, 212 (D.D.C. 2010). That is precisely the procedure, albeit not the ruling on the merits, that Plaintiff seeks in this case.

In particular, in these days of political turmoil, constant accusations and name calling, and concern about our economic and social future,[6] there is, if anything, a heightened public interest in learning what the Government is "up to." Id. at 12. As the Supreme Court pointed out early in FOIA's history, and constantly reiterates, "[o]fficial information that sheds light on the agency's performance of its statutory duties falls squarely within [FOIA's] statutory purpose." Reporters Comm., 489 U.S. at 773. In this case, disclosure of information concerning DoJ's investigation of Rep. Young would unquestionably "shed light on the agency's performance of its statutory duties." Id.

In addition to the widespread public interest in this country at this time in holding its Government accountable, we have the added, and decidedly uncommon fact in this case, that Congress passed a specific piece of legislation, P.L. 110-244, § 502 (June 6, 2008), directing DoJ to conduct an investigation of all "allegations of impropriety regarding item 462 in Section 1934(c) of Public Law 109-59 to ascertain if a violation of Federal criminal law has occurred." Item 462 in § 1934(c) of P.L. 109-59, which was enacted as Section 502 of the Safe, Accountable, Flexible, Efficient Transportation Equity Act: A Legacy for Users (SAFETEA-LU), Technical Corrections Act of 2008, P.L. 110-244 (June 6, 2008), authorized an appropriation of $10 million for a project described as "Coconut Rd. Interchange and I-75/Lee County." Moreover, in a highly unusual, and unexplained, action, the original language in the Appropriations Bill was mysteriously changed after the House and Senate approved the Bill but before the President signed it, to more specifically indicate that Item 462 was for the benefit of the Coconut Road Interchange.

---

[6]  The Court is well aware that this is not the first, or second, time in American history that our political discourse has been polarized, that intemperate language has been used, and that allegations of serious misconduct by public officials have abounded.

Given the fact that Rep. Young was at that time Chair of the House of Representatives Transportation Committee, and given the detailed remarks he made on the floor of the House of Representatives about this matter, there is a substantial public interest in examining the adequacy of DoJ's enforcement of other types of law governing the activities of federal officials, in addition to the explicit direction given by Congress to DoJ to investigate the Coconut Road matter.[7]

The Government argues that Plaintiff has failed to establish any cognizable public interest because "it is only the conduct of the <u>agency</u> holding the requested document that can implicate cognizable public interest under FOIA."  Defendant's Opposition to Plaintiff's Cross-Motion for Partial Summary Judgment and Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment at 13-14 ("Def.'s Opp.") [Dkt. No. 13].  It then goes on to state that "there is significant public interest only if there is compelling evidence that the <u>agency</u> is engaged in illegal activity." <u>Id.</u> at 14 (citing <u>SafeCard Servs. v. S.E.C.</u>, 926 F. 2d 1197, 1205-06 (D.C. Cir. 1991) (emphasis not in original)).

Plaintiff has made it very clear in its papers that it is not arguing that DoJ is engaged in either illegal or negligent action.  Therefore, it is not correct that Plaintiff must provide compelling evidence of any such conduct on the part of DoJ.

It is only when a requester is making such allegations of illegal or otherwise improper conduct that "compelling" evidence must be offered demonstrating such behavior.  <u>ACLU</u>, 655 F.3d at 14.  In <u>ACLU</u>, the Court of Appeals explicitly distinguished situations in which that requirement

---

[7]  For example, <u>see</u> <u>Common Cause v. Nat'l Archives and Records Serv.</u>, 628 F.2d 179, 183 n. 10 (D.C. Cir. 1980) (regarding the Federal Corrupt Practices Act); <u>Wash. Post Co. v. U.S. Dep't of Health and Human Servs.</u>, 690 F.2d 252, 265 (D.C. Cir. 1982) (regarding conflict-of-interest information), and <u>Dow Jones & Co. v. U.S. Dep't of Justice</u>, 724 F. Supp. 985, 990-91 (D.D.C. 1989) (regarding disclosure statutes).

is applicable from the situation presented in this case where a FOIA requester is "not (or at least not only) seeking to show that the government's . . . policy is legally improper . . . ."  Id. at 14.  The Court ruled that evidence of such misconduct is not required in that instance.  "'[M]atters of substantive law enforcement policy . . . are properly the subject of public concern,' whether or not the policy in question is lawful."  Id. (quoting Reporters Comm., 489 U.S. at 766, n. 18).  The Court explained that the fact that the ACLU did not suggest that the DoJ activity at issue was legally improper, "distinguishes this case from cases like our recent decision in Blackwell v. FBI, 646 F.3d 37 (D.C. Cir. 2011)."  Id. at 14 n. 22.[8]  See Judicial Watch, Inc. v. U.S. Dep't of Homeland Sec'y, 598 F. Supp. 2d at 97.

Finally, in Multi Ag Media, the Court of Appeals reiterated, referring to Reporters Comm. and U.S. Department of Defense v. FLRA ("FLRA), 510 U.S. 487, 495 (1994), that the relevant public interest under FOIA is "the extent to which disclosure [of requested files] would serve the 'core purpose of the FOIA' which is 'contribut[ing] significantly to public understanding of the operations and activities of the government.'"  515 F.3d at 1230-31 (quoting FLRA, 510 U.S. at 495).  Thus, it is clear that there is no requirement that a FOIA requester must always allege that the Government is acting illegally in order to establish the existence of a substantial public interest.

The Government also argues that "[w]ere the law as Plaintiff claims, Plaintiff could seek records about any decision to prosecute or not to prosecute."  Def.'s Opp. at 14.  This is known as the time-worn "opening of the flood gates" argument.  As is usually the case with such arguments,

---

[8]  In Blackwell, a convicted felon sought "information from the FBI that he believes would show misconduct by federal investigators and prosecutors handling his case."  646 F.3d at 39.

it vastly overstates the perceived danger and ignores the fact that once a <u>Vaughn</u> Index is filed,[9] the Court will make a specific individualized decision for each document as to whether it should be redacted or totally withheld pursuant to Exemption 6 and Exemption 7(C).

### 3.    Balancing of Privacy and Public Interests

The Court concludes that the balancing of Rep. Young's privacy interest against the public interest in releasing the requested documents tips strongly in favor of the public interest.  As already explained, Rep. Young's private interest is minimal, albeit not *de minimis*, given that DoJ's investigation of him is not a secret and that he himself publicly announced the results of that investigation and discussed his involvement in the proceedings.  Above all, because release of this information would "contribute significantly to public understanding of the operations or activities of the government," the public interest in releasing this information is very strong.  <u>Consumer's Ctr.</u>, 554 F.3d at 1051 (citation and internal quotations omitted).  The public needs to know how DoJ carried out its statutory duties to investigate allegations of bribery and corruption of members of Congress.  That is the purpose of FOIA.

For all the forgoing reasons, the Court concludes that the Government's Motion for Summary Judgment will be **denied**, the Plaintiff's Cross-Motion for Partial Summary Judgment will be **granted**, and the Government will be ordered to submit a <u>Vaughn</u> Index within **60 days of the date of this Opinion**.

January 10, 2012                              /s/

                                              Gladys Kessler
                                              United States District Judge

---

[9] During briefing, and consideration of the <u>Vaughn</u> Index, the Court can, if deemed appropriate, seal the proceedings until a final decision is reached.