UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
                                    :
CITIZENS FOR RESPONSIBILITY         :
AND ETHICS IN WASHINGTON            :
                                    :
          Plaintiff,                :
                                    :
     v.                             :    Civil Action No. 11-754 (GK)
                                    :
U.S. DEPARTMENT OF JUSTICE          :
                                    :
          Defendant.                :
                                    :
```

## MEMORANDUM OPINION

Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW") brings this action against Defendant United States Department of Justice ("DOJ") under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552. Plaintiff seeks materials relating to DOJ investigations of U.S. Representative Don Young.

This matter is presently before the Court on Defendant's Motion for Summary Judgment on Behalf of the Criminal Division and Federal Bureau of Investigation [Dkt. No. 31], Plaintiff's Cross-Motion for Partial Summary Judgment [Dkt. No. 35], Defendant's Motion for Summary Judgment on Behalf of the Executive Office for United States Attorneys [Dkt. No. 37], and Plaintiff's Cross-Motion for Partial Summary Judgment with Respect to Executive Office for United States Attorneys [Dkt. No. 41]. Upon consideration of the Motions, Oppositions,

Replies, and the entire record herein, and for the reasons stated below, Defendant's Motions are **granted in part** and **denied in part**, and Plaintiff's Cross-Motions are **granted in part** and **denied in part**.

## I.   BACKGROUND[1]

CREW is a non-profit corporation "committed to protecting the rights of citizens to be informed about the activities of government officials and to ensuring the integrity of government officials." Compl. ¶ 3 [Dkt. No. 1].

On January 24, 2011, CREW submitted identical FOIA requests to three DOJ Components: the Criminal Division, the Federal Bureau of Investigation ("FBI") and the Executive Office for United States Attorneys ("EOUSA"). It sought records related to DOJ investigations of Rep. Young, "including but not limited to DOJ's decision not to bring criminal charges against him." Def.'s Statement of Undisputed Facts ¶ 2 [Dkt. No. 37-4]. All three DOJ Components categorically denied CREW's requests under FOIA Exemptions 6 and 7(C), 5 U.S.C. § 552(b)(6), (7)(C).

The FBI and the EOUSA notified CREW of its right to appeal the decision to DOJ's Office of Information Policy ("OIP"). On February 7, 2011, CREW appealed the FBI and the EOUSA denials.

---

[1]   Unless otherwise noted, the facts set forth herein are undisputed and drawn from the parties' Statements of Undisputed Material Facts submitted pursuant to Local Civil Rule 7(h).

On April 20, 2011, before receiving a decision from OIP, CREW filed the present lawsuit.

The parties cross-moved for summary judgment regarding DOJ's "categorical" denial of CREW's FOIA requests. On January 10, 2012, this Court denied Defendant's Motion for Summary Judgment and granted Plaintiff's Cross-Motion for Partial Summary Judgment. Citizens for Responsibility and Ethics in Wash. v. D.O.J., 840 F. Supp. 2d 226 (D.D.C. 2012) ("CREW I"). In CREW I, the Court held that the Government could not categorically deny CREW's requests under Exemptions 6 and 7(C), and ordered the DOJ Components to submit Vaughn indices regarding any withheld or redacted documents. Id. at 236. The Court explained that once the indices were submitted, it would "make a specific individualized decision for each document as to whether it should be redacted or totally withheld pursuant to Exemption 6 and 7(C)." Id.

On February 10, 2012, Defendant filed a Motion for Clarification regarding the scope of this Court's Order [Dkt. No. 21]. On March 12, 2012, this Court issued a Minute Order granting Defendant's Motion, and directed that Defendant's Vaughn index "focus[] on those records related to U.S. Department of Justice investigations of U.S. Representative Don

Young involving allegations of bribery and other illegal conduct in the matter known as 'Coconut Road.'"[2]

The DOJ Components filed their <u>Vaughn</u> indices on April 9, 2012. On April 19, 2012, the FBI released 61 pages of material with no redactions, 271 pages redacted in part, and withheld 3 pages in full under FOIA Exemption 7(A). On or about April 23, 2012, the EOUSA released 123 pages of material with no redactions, 1 page redacted in part, and withheld 48 pages in full under FOIA Exemptions 3, 5, 6, and 7(C). On May 2, 2012, the Criminal Division released 31 pages of material with no redactions, 31 pages redacted in part, and withheld 292 pages in full under FOIA Exemptions 5, 6, and 7(C).

---

[2] CREW acknowledges that the Court's order limited DOJ's obligation to produce a <u>Vaughn</u> index to material related to Coconut Road, but maintains in a footnote that DOJ is still responsible for identifying and releasing any other documents that are responsive to its FOIA request. Mem. in Partial Opp'n to Def.'s Mot. for Summ. J. & In Support of Pl.'s Cross-Mot. for Partial Summ. J. 4 n.2 [Dkt. No. 35] ("CREW's Opp'n to Criminal Div. Mot."); Mem. in Partial Opp'n to Def.'s Mot. for Summ. J. On Behalf of EOUSA & In Support of Pl.'s Cross-Mot. for Partial Summ. J. 3 n.2 [Dkt. No. 40] ("CREW's Opp'n to EOUSA Mot.").

The Criminal Division did not address this assertion. The EOUSA insists in a footnote that this argument is an attempt to seek reconsideration of the Court's ruling on the Government's motion for clarification. Def.'s Combined Reply Br. in Support of Its Mot. for Summ. J. on Behalf of the EOUSA & Br. in Opp'n to Pl.'s Cross-Mot. for Partial Summ. J. 21 n.4 [Dkt. No. 45]. CREW did not respond to that argument in its reply. Given that neither the Plaintiff nor the Government has fully addressed this issue, and that it has no bearing on the instant Motions and Cross-Motions, the Court will not resolve it at this time.

On September 25, 2012, DOJ filed its Motion for Summary Judgment on Behalf of the Criminal Division and FBI [Dkt. No. 31]. On October 25, 2012, CREW filed its Opposition and Cross-Motion for Summary Judgment [Dkt. Nos. 34, 35]. On November 19, 2012, DOJ filed its combined Opposition and Reply [Dkt. Nos. 38, 39]. On December 10, 2012, CREW filed its Reply [Dkt. No. 42].

On November 5, 2012, DOJ filed its Motion for Summary Judgment on Behalf of the EOUSA [Dkt. No. 37]. On November 30, 2012, CREW filed its Opposition and Cross-Motion for Summary Judgment [Dkt. Nos. 40, 41]. On January 15, 2013, DOJ filed its combined Opposition and Reply [Dkt. Nos. 44, 45]. On February 14, 2013, CREW filed its Reply [Dkt. No. 46].

## II.  STANDARD OF REVIEW

The purpose of FOIA is to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." Morley v. C.I.A., 508 F.3d 1108, 1114 (D.C. Cir. 2007) (quoting Dep't of Air Force v. Rose, 425 U.S. 352, 361 (1976)). FOIA "requires agencies to comply with requests to make their records available to the public, unless the requested records fall within one or more of nine categories of exempt material." Oglesby v. Dep't of Army, 79 F.3d 1172, 1176 (D.C. Cir. 1996) (citing 5 U.S.C. § 552(a), (b)).

An agency that withholds information pursuant to a FOIA exemption bears the burden of justifying its decision, Petroleum Info. Corp. v. Dep't of the Interior, 976 F.2d 1429, 1433 (D.C. Cir. 1992) (citing 5 U.S.C. § 552(a)(4)(B)), and must submit an index of all materials withheld, referred to as a "Vaughn Index." Vaughn v. Rosen, 484 F.2d 820, 827-28 (D.C. Cir. 1973). In determining whether an agency has properly withheld requested documents under a FOIA exemption, the district court conducts a de novo review of the agency's decision. 5 U.S.C. § 552(a)(4)(B).

"FOIA cases are typically and appropriately decided on motions for summary judgment." Gold Anti-Trust Action Comm., Inc. v. Bd. of Governors of Fed. Reserve Sys., 762 F. Supp. 2d

123, 130 (D.D.C. 2011) (quoting Defenders of Wildlife v. Border Patrol, 623 F. Supp. 2d 83, 87 (D.D.C. 2009)). Summary judgment will be granted when the pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits or declarations, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c).

In a FOIA case, the court may award summary judgment solely on the basis of information provided in affidavits or declarations when they (1) "describe the documents and the justifications for nondisclosure with reasonably specific detail;" (2) "demonstrate that the information withheld logically falls within the claimed exemption;" and (3) "are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by 'purely speculative claims about the existence and discoverability of other documents.'" SafeCard Servs., Inc. v. S.E.C., 926 F.2d 1197, 1200 (D.C. Cir. 1991) (quoting Ground Saucer Watch, Inc. v. C.I.A., 692 F.2d 770, 771 (D.C. Cir. 1981)).

## III. ANALYSIS

The outstanding disputes fall into two categories. First, CREW argues that the Criminal Division and the EOUSA have improperly withheld information under Exemption 5. Second, CREW argues that the Criminal Division and the EOUSA have improperly withheld information under Exemptions 6 and 7(C).[3] Each claim will be addressed in turn.

### A. Exemption 5

Exemption 5 permits an agency to withhold "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. § 552(b)(5). It "is interpreted to encompass, _inter alia_, three evidentiary privileges: the deliberative process privilege, the attorney-client privilege, and the attorney work product privilege." Tax Analysts v. I.R.S., 294 F.3d 71, 76 (D.C. Cir. 2002) (citation omitted).

CREW challenges the withholding and redaction of documents based on both the attorney work product doctrine, and the deliberative process privilege. Because the majority of the documents at issue were appropriately withheld under the

---

[3] CREW has elected to not challenge the FBI's withholdings, CREW's Opp'n to Criminal Div. Mot. 5 n.4., and to not challenge the one document withheld by the EOUSA under FOIA Exemption 3, CREW's Opp'n to EOUSA Mot. 4 n.4.

attorney work product doctrine, the Court addresses that issue first.

### 1. Attorney Work Product Doctrine

The attorney work product doctrine protects materials "prepared in anticipation of litigation." McKinley v. Bd. of Governors of Fed. Reserve Sys., 647 F.3d 331, 341 (D.C. Cir. 2011) (citing Fed. R. Civ. P. 26(b)(3)), cert. denied, 132 S. Ct. 1026 (2012); E.E.O.C. v. Lutheran Soc. Servs., 186 F.3d 959, 968 (D.C. Cir. 1999) (noting that doctrine protects documents or other information that "can fairly be said to have been prepared or obtained because of the prospect of litigation" (citation omitted)). It extends to documents prepared or obtained related to "foreseeable litigation, even if no specific claim is contemplated." Schiller v. N.L.R.B., 964 F.2d 1205, 1208 (D.C. Cir. 1992) (citation omitted), abrogated on other grounds by Milner v. Dep't of Navy, 131 S. Ct. 1259 (2011).

CREW fails to identify any specific document that it has reason to believe was wrongfully withheld as attorney work product. Rather, it asserts that the "D.C. Circuit has long required agencies to justify invocation of the attorney work product doctrine through the submission of detailed explanations establishing the context in which the withheld information was created." CREW's Opp'n to Criminal Div. Mot. 16; CREW's Opp'n to

-9-

EOUSA Mot. 14. It insists that the Government must identify the circumstances surrounding the initiation of the investigation into Young's conduct, the dates on which the investigation commenced and concluded, and the specific roles various employees played in the investigation. CREW's Opp'n to Criminal Div. Mot. 17; CREW's Opp'n to EOUSA's Mot. 15.

There is no support for CREW's broad assertion that our Court of Appeals requires the submission of such information. Although such information is often relevant to a deliberative process privilege claim, where an agency has to establish the context in which certain materials were used in order to show that a document is "both predecisional and deliberative," it is not required in determining the applicability of the attorney work product exemption. See Ancient Coin Collectors Guild v. Dep't of State, 641 F.3d 504, 512 (D.C. Cir. 2011) (quoting Mapother v. Dep't of Justice, 3 F.3d 1533, 1537 (D.C. Cir. 1993)); see also Wolfe v. Dep't of Health & Human Servs., 839 F.2d 768, 774 (D.C. Cir. 1988) (noting that first step in evaluating deliberative process claim is to "examine the context in which the materials are used").

Instead, the relevant inquiry in analyzing an attorney work product claim is far narrower and focuses on whether the documents in question were prepared in anticipation of

litigation. CREW does not explain why the contextual information it seeks is necessary or relevant to that inquiry. Even if such information was relevant to a claim of attorney work product privilege, it would not be applicable in this case.

The Government has filed detailed, specific declarations describing the various documents and explaining that they were prepared in contemplation of litigation. CREW does not identify any reason to doubt those explanations, and thus, they are entitled to a presumption of good faith. See SafeCard Servs., 926 F.2d at 1200 (noting that "[a]gency affidavits are accorded a presumption of good faith, which cannot be rebutted by purely speculative claims") (internal quotation marks and citation omitted).

Specifically, the EOUSA asserts that the eleven documents it seeks to withhold are "records or portions of records that reflect such matters as potential legal charges and claims, [U.S. Attorney's Office] resource allocations, investigation strategy including [Assistant U.S. Attorney] handwritten notes, and [Assistant U.S. Attorney] evaluations and opinions relating to a third-party's file" that were "prepared by or at the request or direction . . . of an [Assistant U.S. Attorney] in anticipation of or during litigation." Decl. of Vinay J. Jolly ¶ 19 ("Jolly Decl.") [Dkt. No. 37-2]; see also Def.'s Mot. for

-11-

Summ. J. on Behalf of the EOUSA 15 (asserting that documents were "prepared by or for the use of attorneys during a potential investigation undertaken to determine whether federal criminal charges were warranted") [Dkt. No. 37].

The detailed individual descriptions of each document in the EOUSA's Vaughn index support its claims. For example, specific entries in the EOUSA's Second Vaughn Index [Dkt. No. 37-3] describe individual documents as "notes regarding . . . next investigation steps" (Document 1), "analysis regarding legal claims, resources, and disposition" (Document 2), "notations and analysis of potential legal claims and trial strategy" (Document 3), and "legal citations and analysis related to potential claims" (Document 4). These are clearly the type of documents protected by the work product doctrine. See Senate of Puerto Rico v. Dep't of Justice, 823 F.2d 574, 586 (D.C. Cir. 1987) (noting that "internal memoranda concerning the status of a criminal investigation, prepared by DOJ attorneys in the course of their law enforcement duties, are surely the kind of documents sheltered by the work product doctrine").

The Criminal Division has also established that the vast majority of the documents it seeks to withhold under Exemption 5

are attorney work product.[4] The doctrine protects the records of law enforcement investigations when the investigation is "based upon a specific wrongdoing and represent[s] an attempt to garner evidence and build a case against the suspected wrongdoer." SafeCard Servs., 926 F.2d at 1202; see also In re Sealed Case, 146 F.3d 881, 885 (D.C. Cir. 1998) (noting that "when government lawyers prepare a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party," they have sufficiently established that the document was prepared because of the prospect of litigation) (internal quotation marks and citation omitted).

The Criminal Division asserts that the documents withheld "were gathered as part of an investigation of specific wrongdoing during which the government was attempting to build a case against a suspected wrongdoer." Decl. of John E. Cunningham III ¶ 17 ("Cunningham Decl.") [Dkt. No. 31-2]; see also id. ¶ 20 (noting that "[t]hese documents represent the trial attorneys' distillation of facts, legal analyses, opinions, and recommendations about whether to prosecute Rep. Young").

---

[4] The Court evaluates Documents 40-43 and 53-58 under the deliberative process privilege. See infra sec. III.A.2.

In addition, the Criminal Division's <u>Vaughn</u> index and the Cunningham Declaration provide specific individualized information about each document withheld that supports its claims. <u>See</u> Criminal Division's Second <u>Vaughn</u> Index [Dkt. No. 31-3] (describing documents as handwritten interview notes (Documents 1 and 2), a case summary with handwritten notations (Document 4), an outline and/or timeline (Document 29), and containing other similar descriptions); <u>see also</u> Cunningham Decl. (describing Document 6 as "inventory summary" (¶ 24); Documents 7, 8, and 48 as drafts of "Talking Points" discussing potential charges, theories of prosecution, and summaries of the evidence (¶ 25); and Documents 9 and 17 as a litigation outline/timeline (¶ 26), among other descriptions). Thus, the Criminal Division has provided sufficient support for its claim that the majority of the documents withheld under Exemption 5 are attorney work product.

The cases cited by CREW in support of its assertion that an agency must provide additional context do not support its position. The first case CREW cites is <u>Senate of Puerto Rico</u>, 823 F.2d 574. Although our Court of Appeals did reject DOJ's claim of attorney work product privilege in that case, it did so because the agency provided only a single, conclusory sentence on the issue of whether the documents it sought to withhold were

-14-

prepared "in contemplation of litigation." Id. at 586 (noting that DOJ asserted that the documents "were prepared by Civil Rights Division attorneys in anticipation of litigation," but made "no other reference . . . to this essential element" of its claim). As discussed above, this is the crucial element that an agency must establish to justify withholding documents as attorney work product, and the Government has successfully met its burden on that element in the instant case.

The second case CREW cites, SafeCard Services, Inc., 926 F.2d 1197, directly contradicts its claim that more information is needed to justify the Government's claims of privilege. Although the Court of Appeals did note that "the work product exemption, read over-broadly, could preclude almost all disclosure from an agency with substantial responsibilities for law enforcement," 926 F.2d at 1203, it then stated "that where an attorney prepares a document in the course of an active investigation focusing upon specific events and a specific possible violation by a specific party, it has litigation sufficiently 'in mind' for that document to qualify as attorney work product." Id. The Government has sufficiently demonstrated that the withheld documents were created in the course of the DOJ's investigation into Rep. Young's potentially illegal actions with respect to the "Coconut Road" earmark.

Moreover, the original FOIA request specifically sought all documents related to DOJ's investigations of Rep. Young concerning allegations of bribery and other illegal conduct. See CREW I, 840 F. Supp. 2d at 231. Therefore, the scope of the document request itself supports the Court's conclusion that the Government's documents are attorney work product and its affidavits should be credited. See Ancient Coin Collectors Guild, 641 F.3d at 509 ("Uncontradicted, plausible affidavits showing reasonable specificity and a logical relation to the exemption are likely to prevail.") (citing Larson v. Dep't of State, 565 F.3d 857, 862 (D.C. Cir. 2009)).

One set of documents requires further · analysis. The Criminal Division identified Document 40 as an email chain which contains "ten emails sent between [Criminal Division] attorneys and DOJ case agents" that "contain a discussion of an article identified as 'Quiet Justice on Coconut Road Earmark.'" Cunningham Decl. ¶ 36. "One of the emails appears to have been sent to a DOJ attorney by a reporter for Congressional Quarterly. Specifically, the emails involve a discussion among [Criminal Division] attorneys related to the previously mentioned article, and further discuss possible responses from the Criminal Division to a question proffered by the Congressional Quarterly reporter to a DOJ attorney." Id.

Documents 41-43 and 53-58 are email chains that "contain a discussion amongst [Criminal Division] attorneys related to the previously mentioned email from the reporter, and further discussing possible ramifications to their investigation should the Criminal Division respond to the inquiry proffered by the reporter." Id. ¶ 37.

While the Criminal Division does not explain how these documents were "prepared in anticipation of litigation," it is not necessary to resolve this issue, which has not been specifically addressed by the parties, because it is clear that these documents are protected by the deliberative process privilege. The Government has otherwise fully satisfied its burden of demonstrating that the withheld records were prepared in anticipation of litigation, and, thus, that they were properly withheld as attorney work product under Exemption 5.

Finally, our Court of Appeals has ruled that "any part of a document prepared in anticipation of litigation, not just the portions concerning opinions, legal theories, and the like, is protected by the work product doctrine." Judicial Watch, Inc. v. Dep't of Justice, 432 F.3d 366, 371 (D.C. Cir. 2005) (citing Tax Analysts v. I.R.S., 117 F.3d 607, 620 (D.C. Cir. 1997)). Thus, the Court finds that the agency has met its burden to disclose all segregable portions of otherwise exempt records. Sussman v.

-17-

Marshals Serv., 494 F.3d 1106, 1117 (D.C. Cir. 2007) (noting
that district court must make specific finding regarding
segregability of documents withheld under exemptions).

### 2.   Deliberative Process Privilege

The deliberative process privilege protects "documents
reflecting advisory opinions, recommendations, and deliberations
comprising part of a process by which governmental decisions and
policies are formulated, as well as other subjective documents
that reflect the personal opinions of the writer prior to the
agency's adoption of a policy." Tax Analysts, 294 F.3d at 80
(citation omitted). The "key question" is whether disclosure of
the information "would discourage candid discussion within the
agency." Access Reports v. Dep't of Justice, 926 F.2d 1192, 1195
(D.C. Cir. 1991) (citation and internal quotation marks
omitted).

To invoke the deliberative process privilege, an agency
must show that a document is "both predecisional and
deliberative." Ancient Coin Collectors Guild, 641 F.3d at 512
(quoting Mapother, 3 F.3d at 1537). A document is predecisional
if it was "generated before the adoption of an agency policy"
and deliberative if it "reflects the give-and-take of the
consultative process." Judicial Watch, Inc. v. Food & Drug
Admin., 449 F.3d 141, 151 (D.C. Cir. 2006) (citing Coastal

-18-

States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980)).

First, the Court finds that the Criminal Division has sufficiently established that Documents 40-43 and 53-58 are predecisional and deliberative. The Cunningham Declaration describes the content of these emails as discussions related to "possible responses from the Criminal Division to a question proffered by the Congressional Quarterly reporter to a DOJ attorney" and "possible ramifications to their investigation should the Criminal Division respond to the inquiry proffered by the reporter." Cunningham Decl. ¶¶ 36-37. Thus, the documents are predecisional because the documents were "generated before the adoption of an agency policy," and deliberative because there was a "give-and-take" regarding how to proceed. Judicial Watch, 449 F.3d at 151 (citation omitted).

Other members of this District Court have found similar documents covered by the deliberative process privilege. See Judicial Watch, Inc. v. Dep't of Treasury, 796 F. Supp. 2d 13, 31 (D.D.C. 2011) (finding that deliberative process privilege covered email exchange "reflect[ing] internal deliberations as to how to respond to a press inquiry"); Judicial Watch, Inc. v. Dep't of Homeland Sec., 736 F. Supp. 2d 202, 208 (D.D.C. 2010) (holding that deliberative process privilege covered emails

-19-

"discuss[ing] how to respond to on-going inquiries from the press"). It is clear that email exchanges between employees regarding how to respond to pending press inquiries are the types of discussions that agency employees are entitled to have without fear of disclosure. See Tax Analysts, 294 F.3d at 80 (noting that the privilege protects "internal deliberations"); see also Access Reports, 926 F.2d at 1195 (focusing inquiry on whether disclosure "would discourage candid discussion within the agency").

CREW's generic arguments regarding the deliberative process privilege are not persuasive with regard to these specific documents. First, CREW argues that Defendants have not provided enough context to allow the Court to evaluate whether the documents were appropriately withheld. They insist that the Government must identify specific information, including the "function and significance of the documents in the agency's decision making process," the "nature of the decisionmaking authority vested in the office or person issuing the disputed documents," the "positions in the chain of command of the parties to the documents," and "a timeframe during which these activities took place." CREW's Opp'n to Criminal Div. Mot. 10 (citing Arthur Andersen & Co. v. I.R.S., 679 F.2d 254, 258 (D.C. Cir. 1982) (internal quotation marks and citations omitted));

Reply Mem. in Support of Pl.'s Cross-Mot. for Partial Summ. J. With Respect to the Criminal Division 3 [Dkt. No. 42].

There is no case law which mandates that an agency must always provide the extremely detailed descriptive information that CREW requests in order to justify withholding documents under the deliberative process privilege. In fact, our Court of Appeals has resisted making such categorical rules. See, e.g., Judicial Watch, 449 F.3d at 151 (refusing to adopt a categorical rule that any undated entry cannot be considered predecisional). Rather, the agency's burden is to submit Vaughn indices and affidavits that are "specific enough so that the elements of the privilege can be identified." Judicial Watch, Inc. v. Postal Serv., 297 F. Supp. 2d 252, 257 (D.D.C. 2004).

As discussed above, the Criminal Division has provided sufficient information for the Court to evaluate whether the deliberative process privilege applies. Moreover, with respect to these documents in particular, the Criminal Division has identified many of the specifics that CREW requests. It disclosed the dates of the emails, see Criminal Division's Second Vaughn Index 5-6, 8-9, and identified the parties involved with sufficient detail to understand the email conversations without disclosing personal information that might invade the privacy interests protected by Exemptions 6 and 7.

See infra sec. III.B. Thus, CREW's insistence that the Government has failed to provide sufficient context is unpersuasive.

Second, CREW argues that the Government must disclose any documents or portions of documents that articulate and form the basis for the final decision not to prosecute Rep. Young.[5] However, the deliberative process privilege does not turn on identifying such a decision. As the Supreme Court has observed, "the need to protect pre-decisional documents does not mean that the existence of the privilege turns on the ability of an agency to identify a specific decision in connection with which a memorandum is prepared." N.L.R.B. v. Sears, Roebuck & Co., 421 U.S. 132, 151 n.18 (1975); see also Access Reports, 926 F.2d at 1196 ("Any requirement of a specific decision after the creation of the document would defeat the purpose of the exemption. At the time of writing the author could not know whether the decisionmaking process would lead to a clear decision, establishing the privilege, or fizzle, defeating it.").

Moreover, to the extent that the public is entitled to disclosure of "the reasons which did supply the basis for an agency policy actually adopted," see Sears, 421 U.S. at 152-53,

---

[5] The Court notes that the basis for the Government's decision not to prosecute Rep. Young is not a matter of public record.

-22-

there is no indication that these emails contain the final decision not to prosecute Rep. Young or the reasons behind that decision. Rather, the <u>Vaughn</u> index and the Cunningham Declaration assert that these documents embody a discussion within the agency about how to respond to a press inquiry. Thus, CREW's insistence that portions of these documents should be disclosed because they discuss the agency's decision not to prosecute Rep. Young is not persuasive.

Third, CREW argues that the Government is withholding documents that contain "purely factual information" that are not protected by the deliberative process privilege. Purely factual material cannot be withheld under Exemption 5 unless it "reflects an exercise of discretion and judgment calls." <u>Ancient Coin Collectors Guild</u>, 641 F.3d at 513 (citing <u>Mapother</u>, 3 F.3d at 1539 (internal quotation marks omitted)). CREW criticizes the Government's argument that certain fact summaries were appropriately withheld because they involved an exercise of judgment with regard to what evidence or testimony might be relevant or significant to a prosecution. CREW notes that "a report does not become part of the deliberative process merely because it contains only those facts which the person making the report thinks material." CREW's Opp'n to Criminal Div. Mot. 15 (citing <u>Nat'l Whistleblower Ctr. v. Dep't of Health & Human</u>

Serv., 849 F. Supp. 2d 13, 37 (D.D.C. 2012) (citations and internal quotation marks omitted)).

No factual summaries are at issue here, and there is no reason to believe that these email discussions contain "purely factual material" that should be segregated and provided to Plaintiff. Unlike documents that have been found to be purely factual, these documents do not recount underlying facts discovered in the investigation in a chronological fashion, Mapother, 3 F.3d at 1540, or summarize information that already exists in the public domain, Petroleum Info Corp., 976 F.2d at 1438. Even if some underlying facts were included in these documents, they clearly "reflect an agency's preliminary positions or ruminations about how to exercise discretion" and thus are protected by the deliberative process privilege. Id. at 1435.

Therefore, the Court concludes that the Government has established that Documents 40-43 and 53-58 are protected by the deliberative process privilege. Moreover, the Court concludes, based on the agency's detailed descriptions of these documents, that they are non-segregable. Sussman, 494 F. 3d at 1117 (requiring specific findings regarding segregability).

**B.    Exemption 6 and Exemption 7(C)**

Both the Criminal Division and the EOUSA withheld documents and redacted portions of released documents claiming that the information was protected by Exemption 6 and Exemption 7(C). Exemption 6, applies to "personnel or medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Exemption 7(C) applies to "records or information compiled for law enforcement purposes" when disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C).

Exemption 7(C) is "more protective of privacy than Exemption 6 and thus establishes a lower bar for withholding material." A.C.L.U. v. Dep't of Justice, 655 F.3d 1, 6 (D.C. Cir. 2011) (citation and internal quotation marks omitted) (noting that "Exemption 7(C) permits withholding of . . . records if disclosure would constitute an 'unwarranted' invasion of personal privacy, while Exemption 6 requires a 'clearly unwarranted' invasion to justify nondisclosure"). Because CREW does not dispute that the requested records are "records compiled for law enforcement purposes" and thus subject to Exemption 7(C), the Court need only consider whether the EOUSA

and the Criminal Division properly invoked Exemption 7(C). See id.

To evaluate whether records were appropriately withheld under Exemption 7(C) the Court must first ascertain whether a "legitimate privacy interest is implicated." Sussman, 494 F.3d at 1115. If so, the requester must "(1) show that the public interest sought to be advanced is a significant one, an interest more specific than having the information for its own sake, and (2) show the information is likely to advance that interest." Id. (citation omitted).

CREW's only objection to the Government's withholdings under Exemptions 6 and 7(C) is that the Government has redacted information related to Rep. Young, under the umbrella of protecting the information of "third parties of investigative interest." CREW insists that this Court has already decided that Young's information is discoverable and should be disclosed, citing CREW I, 840 F. Supp. 2d at 236.

In CREW I, this Court addressed the issue of whether DOJ could categorically withhold all of the relevant documents under Exemptions 6 and 7(C) "because Rep. Young has a privacy interest in the requested records and Plaintiff has failed to articulate a public interest that overrides his privacy interest." Id. at 230. The Court made several findings. First, the Court found

-26-

that Rep. Young had a "substantial – although much diminished – privacy interest." Id. at 233-34. Second, the Court found that there was "substantial public interest" in examining how DOJ enforces the "law governing the activities of federal officials," particularly considering "the explicit direction given by Congress to the DOJ to investigate the Coconut Road matter." Id. at 235. Finally, the Court found that "the balancing of Rep. Young's privacy interest against the public interest in releasing the requested documents tips strongly in favor of the public interest." Id. at 236.

CREW is correct that this Court has already found that there is a legitimate privacy interest at issue, the public interest is significant, and the information sought is likely to advance that interest. Thus, CREW has satisfied its burden. See Sussman, 494 F.3d at 1115.

The Government insists that the Court has only ruled on its categorical denial, and points to the Court's observation that "once a Vaughn index is filed, the Court will make a specific individualized decision for each document as to whether it should be redacted or totally withheld pursuant to Exemption 6 and 7(C)." CREW I, 840 F. Supp. 2d at 236. The Government is correct that it is entitled to make individualized arguments as to why particular documents might be appropriately withheld

under those Exemptions, but it has failed to actually make those individualized arguments with respect to Rep. Young.

The Vaughn indices, Declarations, and Briefs proffered by the Government do not distinguish between Rep. Young and other third parties. They do not at any point discuss this Court's findings that Rep. Young's privacy interest is clearly diminished by the fact that DOJ's investigations into his activity are "already a matter of public record." See id. at 233. The Government also does not address this Court's observation that the public interest in this case is enhanced by the "added, and decidedly uncommon fact" that Congress passed a specific piece of legislation directing DOJ to investigate possible improprieties related to the "Coconut Road" appropriation. Id. at 234.

Currently, the Government's argument is limited to boilerplate language regarding private and public interests under these Exemptions. It is sometimes appropriate to evaluate the interests of broad categories of individuals such as agency employees, suspects, and witnesses, as the Government did here and to which CREW did not object. However, in a case cited by the Government for support, Kimberlin v. Dep't of Justice, 139 F.3d 944 (D.C. Cir. 1998), our Court of Appeals conducted an individualized analysis of the interests implicated by the

-28-

potential release of documents related to a particular, named individual. See id. at 949. The Government cannot treat Rep. Young as merely a "suspect" whose name happens to be mentioned in these records, because this does not fulfill its obligation to balance the specific interests involved.

The burden is on the agency to justify its decision to withhold information pursuant to a FOIA exemption, Petroleum Info. Corp., 976 F.2d at 1433 (citing 5 U.S.C. § 552(a)(4)(B)), and the Government has not done so with regard to the information related to Rep. Young. The EOUSA and the Criminal Division are directed to review the documents and portions of documents that have been withheld under Exemptions 6 and 7(C) and disclose such information, or justify more specifically why it should not do so considering the specific interests implicated.

C.   **In Camera** Review

CREW has requested that this Court conduct an in camera inspection of the withheld documents. 5 U.S.C. § 552(a)(4)(B) grants courts the ability to "examine the contents of such agency records in camera to determine whether such records or any part thereof shall be withheld." The decision regarding whether or not to grant in camera review is left to the broad discretion of the district court. A.C.L.U. v. Dep't of Defense,

-29-

628 F.3d 612, 626 (D.C. Cir. 2011) (quoting Ctr. for Auto Safety v. E.P.A., 731 F.2d 16, 20 (D.C. Cir. 1984)).

Our Court of Appeals has made clear that when the agency has met its burden by means of affidavits, "in camera review is neither necessary nor appropriate." A.C.L.U., 628 F.3d at 626 (quoting Hayden v. Nat'l Sec. Agency/Cent. Sec. Serv., 608 F.2d 1381, 1387 (D.C. Cir. 1979)). In this case, with the exception of redacted information related to Rep. Young, the agencies have provided affidavits and Vaughn indices that "set[] forth with specificity the information withheld and the reasons preventing its disclosure" under Exemption 5. A.C.L.U., 628 F.3d at 627. Thus, CREW's request for in camera review of those documents is denied.

## IV.  CONCLUSION

For the foregoing reasons, the Government's Motions for Summary Judgment will be **granted in part** and **denied in part**, and CREW's Cross-Motions for Summary Judgment will be **granted in part** and **denied in part**. The Government will be ordered to submit an updated Vaughn Index in conformity with this Memorandum Opinion no later than **August 1, 2013**.

An Order shall accompany this Memorandum Opinion.


June 12, 2013                        /s/ Gladys Kessler
                                    Gladys Kessler
                                    United States District Judge


**Copies to**: attorneys on record via ECF