# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

CITIZENS FOR RESPONSIBILITY     )
AND ETHICS IN WASHINGTON,     )
                                          )       **Civil Action No. 1:11-cv-00754 (GK)**
         **Plaintiff,**        )
                                          )
**v.**                                          )
                                          )
**U.S. DEPARTMENT OF JUSTICE,**     )
                                          )
         **Defendant.**        )
_____)

## DEFENDANT'S MEMORANDUM IN OPPOSITION TO
## <u>PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND COSTS</u>

# **TABLE OF CONTENTS**

INTRODUCTION ...................................................................................................1

BACKGROUND ...................................................................................................1

    I.      Plaintiff's FOIA Requests.............................................................1

    II.     The FOIA Privacy Issue................................................................3

    II.     Defendant's Withholdings ...........................................................3

STANDARD OF REVIEW ....................................................................................4

ARGUMENT ..........................................................................................................6

I.     The $75,165.00 in Attorney's Fees That Plaintiff Seeks Is Unreasonable
and Should Be Denied Because Defendant Had a Reasonable Basis in Law
for Its Withholding Decisions .......................................................................6

II.    Alternatively, Any Award Should Be Severely Discounted............................14

    A.     The Hourly Rates Sought by Plaintiff Should Be Based on the
Updated <u>Laffey</u> Matrix Prepared by the U.S. Attorney's Office, as
Previously Requested by Plaintiff in at Least Two Recent FOIA
Cases ................................................................................................14

    B.     Any Fee Award Should Be Reduced Because Plaintiff Failed to
Exercise Billing Judgment ................................................................21

          1.     Plaintiff's Reconstructed Time Records Are Inadequate
To Establish the Hours Reasonably Expended on This Case ..................21

          2.     Plaintiff Should Not Recover for Time Spent During the
Administrative Phase ................................................................23

          3.     Plaintiff Should Not Recover Attorney's Fees for Entries
Representing Block Billing........................................................23

          4.     Plaintiff Should Not Recover Attorney's Fees for
Reviewing Documents Produced in Response to Its FOIA
Request......................................................................................24

          5.     The Vast Majority of the Remaining Time Entries Reflect
Overbilling, and Should Be Reduced........................................25

i

6.      Additionally, and in the Alternative, the Court Should
        Discount the Entire Award by at least 20% in Light of
        the Reasonableness of Defendant's Withholding
        Decisions ............................................................................................27

7.      Plaintiff Cannot Show Whether Its Payment of $1,050.00
        In Costs for Compensating a Declarant Was Reasonable
        Without Further Explanation ..................................................................28

C.      Any "Fees on Fees" Awarded Should Be Severely Reduced ..............................28

        1.      The Court Should Decline to Award "Fees on Fees" ..............................29

        2.      Any "Fees on Fess" Award Should Be Reduced
                Because of Overbilling ..............................................................................29

        3.      Additionally, and in the Alternative, "Fees on Fees"
                Should Be Reduced by at Least 20% ........................................................31

        4.      Because Defendant Served a Rule 68 Offer of
                Judgment on December 6, 2013, Defendant Requests
                That the Court Divide Any Fee Award into Fees
                Incurred Until and After that Date ............................................................32

D.      Proposed Calculation of Fee and Cost Awards ....................................................33

CONCLUSION ......................................................................................................................34

## INTRODUCTION

Plaintiff seeks a windfall to which it is not entitled.  Because the three components of the U.S. Department of Justice to which Plaintiff served Freedom of Information Act ("FOIA") requests had a reasonable basis in law for their withholding decisions, Plaintiff is not entitled to an award of attorney's fees.  In any event, any such award should be severely discounted.  First, while in previous FOIA cases Plaintiff has urged the Court to award fees based on the hourly rates in the U.S. Attorney's Office Laffey Matrix, it does not do so here, and fails to explain its reversal in position.  Second, any fee award should be reduced because Plaintiff failed to exercise billing judgment by overbilling the government.  Third, any award of "fees on fees" should also be reduced because of overbilling.  Finally, Defendant respectfully requests that if the Court makes a fee award, it should divide any such award into fees incurred until the date Defendant made Plaintiff an Offer of Judgment and fees incurred after that date.

## BACKGROUND

### I.      Plaintiff's FOIA Requests

This case involves a FOIA request for records by Plaintiff Citizens for Responsibility and Ethics in Washington ("CREW" or "Plaintiff") concerning a Department of Justice investigation of U.S. Representative Don Young arising out of an incident that has become known as the "Coconut Road Earmark."  CREW v. U.S. Dep't of Justice, 840 F. Supp. 2d 226, 231 (D.D.C. 2012).  On January 24, 2011, Plaintiff submitted identical FOIA requests to three component agencies, the Federal Bureau of Investigation ("FBI"), the Executive Office for United States Attorneys ("EOUSA"), and the Justice Department's Criminal Division ("Criminal Division") (collectively, "the agencies") seeking records related to that investigation.  Compl. for Injunctive

1

and Declaratory Relief ("Compl.") ¶ 6 [ECF No. 1].  FBI responded in a letter dated January 25,

2011, and stated:

> You have requested records concerning a third party. . . . Records pertaining to a third party generally cannot be released absent express authorization and consent of the third party, proof that the subject of your request is deceased, or a clear demonstration that the public interest in disclosure outweighs the personal privacy interest and that significant public benefit would result from the disclosure of the requested records.  Since you have not furnished a Certificate of Identity form, proof of death, or public justification for release, the release of records concerning a third party would result in an unwarranted invasion of personal privacy and would be in violation of the Privacy Act, 5 U.S.C. § 552a.  These records are also generally exempt from disclosure pursuant to sections (b)(6) and (b)(7)(C) of the Freedom of Information Act, 5 U.S.C. § 552. . . .

> If requested, we will conduct a search for any public records maintained in our files, such as court records and news clippings, without the express authorization of the third party, proof of death, or public justification for release provided the subject is of sufficient notoriety.  [If public documents exist in our files and you desire to obtain them, please reply with a letter asking for the public documents.]

CREW, 840 F. Supp. 2d at 228-29.  FBI also notified Plaintiff of its right to appeal the agency's

decision to the Justice Department's Office of Information and Policy.  Id. at 229.  EOUSA

responded in similar fashion to Plaintiff's FOIA request, and also informed Plaintiff of its right

to appeal that agency's decision to the Office of Information and Policy.  Id.; Def. Mot. for

Summ. J. ("Def. MSJ"), Decl. of Vinay Jolly ¶ 7 & Ex. B [ECF No. 10-5].  Plaintiff appealed

the FBI and EOUSA denials on February 7, 2011, but filed the present lawsuit before receiving

an appeals decision from the Office of Information and Policy.  CREW, 840 F. Supp. 2d at 229.

　　　Plaintiff filed the present lawsuit before the Criminal Division had provided Plaintiff with

a substantive response.  Def. MSJ, Decl. of Kristin Ellis ¶¶ 8-9 [ECF No. 10-3].  Upon further

review of Plaintiff's request, the Criminal Division determined that the requested third-party law

enforcement related information could not be released without a privacy waiver, proof of death,

or a showing of an overriding public interest.  Id. ¶¶ 9, 11.

2

II.     **The FOIA Privacy Issue**

The Court directed the parties to brief the FOIA privacy issue, Order dated July 5, 2011 [ECF No. 8], and the parties cross-moved for summary judgment.  ECF Nos. 10-13, 16.  On January 10, 2012, the Court ruled on the parties' motions.  The Court determined that Representative Young had a cognizable, albeit diminished, privacy interest in the requested information.  CREW, 840 F. Supp. 2d at 232-33.  The Court also found that there was a substantial public interest favoring the disclosure of that information.  Id. at 233-36.  Balancing the two interests, the Court held that the public interest in disclosure outweighed Representative Young's privacy interest.  Id. at 236.  The Court ordered the Criminal Division, FBI, and EOUSA to submit a Vaughn Index of the withheld information within 60 days.  Id.  In response to Defendant's motion for clarification, the Court issued a minute order on March 12, 2012 explaining that the Vaughn Index was limited to "those records related to U.S. Department of Justice investigations of U.S. Representative Don Young involving allegations of bribery and other illegal conduct in the matter known as 'Coconut Road.'"  Defendant filed the Vaughn Indexes on April 9, 2012 [ECF No. 26].

III.    **Defendant's Withholdings**

On April 19, 2012, FBI released 61 pages of material with no redactions, 271 pages redacted in part, and withheld 3 pages in full under FOIA Exemption 7(A).  Mem. Op. (June 12, 2013) at 4 [ECF No. 48].  On or about April 23, 2012, EOUSA released 123 pages of material with no redactions, 1 page redacted in part, and withheld 48 pages in full under FOIA Exemptions 3, 5, 6, and 7 (C).  Id.  On May 2, 2012, the Criminal Division released 31 pages of material with no redactions, 31 pages redacted in part, and withheld 292 pages in full under FOIA Exemptions 5, 6, and 7(C).  Id.

The parties cross-moved for summary judgment as to whether the Criminal Division and EOUSA had properly withheld information under Exemptions 5, 6, and 7(C).  Mem. Op. (June 12, 2013) at 8; see also ECF Nos. 31, 34-35, 37-41, 44-46.  The Court held that the Criminal Division and EOUSA had properly withheld information protected by the attorney work product doctrine, Mem. Op. (June 12, 2013) at 9-18, and by the deliberative process privilege.  Id. at 18-24.  With respect to information withheld under Exemptions 6 and 7(C), the Court directed EOUSA and the Criminal Division to file supplemental Vaughn Indexes by August 1, 2013 containing a more specific justification as to why Exemptions 6 and 7(C) protected the information at issue.  Id. at 25-29.  The Court declined Plaintiff's request for the Court to conduct an in camera review of the withheld documents.  Id. at 29-30.

In accordance with the Court's order, EOUSA and the Criminal Division filed supplemental Vaughn Indexes on August 1, 2013 [ECF No. 49].  The parties later stipulated to the dismissal of all remaining claims in the case, with the exception of the propriety of an award of attorneys' fees and costs [ECF No. 54].  On December 6, 2013, Defendant served an Offer of Judgment pursuant to Fed. R. Civ. P. 68 regarding Plaintiff's fees and costs incurred to that date.  Plaintiff declined the offer, and filed its motion for attorneys' fees and costs on December 20, 2013, seeking a total of $75,165 in fees and $1,150 in costs.  See Pl. Mot. for Attys' Fees and Costs ("Pl. Mot.") [ECF No. 55].  Exhibit 1 to this Opposition contains a breakdown of Plaintiff's requested fees.

**STANDARD OF REVIEW**

A plaintiff must satisfy a two-step inquiry to receive fees and costs in a FOIA action.  First, the plaintiff must show that it is eligible for an award.  Eligibility does not end the inquiry, however, as FOIA plaintiffs seeking fees must show that they are not only eligible for fees, but

4

entitled to them.  <u>Church of Scientology of Cal. v. Harris</u>, 653 F.2d 584, 590 (D.C. Cir. 1981).

The entitlement inquiry examines (1) the public benefit derived from the case; (2) the

commercial benefit to the complainant; (3) the nature of the complainant's interest in the records

sought; and (4) whether the government's withholding had a reasonable basis in law.  <u>See</u> <u>Davy</u>

<u>v. CIA</u>, 550 F. 3d 1155, 1159 (D.C. Cir. 2008).  Ultimately, the decision on whether a plaintiff is

entitled to attorneys' fees "rests in the sound discretion of the district court."  <u>Church of</u>

<u>Scientology</u>, 653 F.2d at 590.

　　　　If the Court finds that Plaintiff is eligible for, and entitled to, attorneys' fees, it must

determine a reasonable amount of fees.  An appropriate starting point is typically the lodestar, a

reasonable number of hours multiplied by a reasonable hourly rate.  <u>See</u> <u>Hensley v. Eckerhart</u>,

461 U.S. 424, 433 (1983).  However, as a decision to award fees is discretionary, a court "may

deny in its entirety a request for an outrageously unreasonable amount, lest claimants feel free to

make unreasonable demands, knowing that the only unfavorable consequence of such

misconduct would be reduction of their fee to what they should have asked for in the first place."

<u>Envtl. Defense Fund, Inc. v. Reilly</u>, 1 F.3d 1254, 1258 (D.C. Cir. 1993) (citation and internal

punctuation omitted).  If overbilling is less egregious but still unreasonable, the Court "may

impose a lesser sanction, such as awarding a fee below what a 'reasonable' fee would have been

in order to discourage fee petitioners from submitting an excessive request."  <u>Id.</u> (citation

omitted).

**ARGUMENT**

I.      **The $75,165.00 in Attorney's Fees That Plaintiff Seeks Is Unreasonable and Should Be Denied Because Defendant Had a Reasonable Basis in Law for Its Withholding Decisions.**

For the purposes of this motion, Defendant does not contest that under the circumstances of this suit, Plaintiff is eligible for a partial award of fees.  However, Plaintiff has failed to demonstrate that it is entitled to such a fee award.  At the time the government's withholding decisions were made, those decisions were reasonable, and had a substantial basis in governing law.  Plaintiff has thus failed to meet its burden.[1]

A significant factor to be considered in whether a plaintiff is "entitled" to a fee award is "whether the agency's opposition to disclosure had a reasonable basis in law" and "whether the agency had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior."  Davy, 550 F.3d at 1162 (citation and internal punctuation omitted).  The failure to show that Defendant unreasonably withheld documents "may foreclose a claim for attorney fees" or costs.  Summers v. U.S. Dep't of Justice, 477 F. Supp. 2d 56, 63 (D.D.C. 2007) (citing Chesapeake Bay Found. v. U.S. Dep't of Agric., 11 F.3d 211, 216-17 (D.C. Cir. 1993)); see also Nationwide Bldg. Maintenance, Inc. v. Sampson, 559 F.2d 704, 712 n.34 (D.C. Cir. 1977) ("[I]f the government only establishes that it had a reasonable basis in law for resisting disclosure it may be proper to deny a FOIA plaintiff's motion for attorney fees unless other factors affirmatively justify such an award.").

In analyzing this factor, "it is not necessary for the Court to find that the information the Government chose to withhold was in fact exempt.  What is required is a showing that the

---

[1] Factors (2) and (3), which are closely related and often analyzed together, typically favor a fee award when the plaintiff is a non-profit organization that disclaims any commercial interest in the records sought.  Defendant therefore concedes that the Court is likely to find that these factors do not weigh against Plaintiff.  The remaining two, however, clearly do and require that Plaintiff be deemed not entitled to attorney's fees.

Government had a reasonable basis in law for concluding that the information at issue was exempt and that it had not been recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." <u>Fenster v. Brown</u>, 617 F.2d 740, 744 (D.C. Cir. 1979) (internal punctuation omitted).  Additionally, consideration is given to whether "the government had a reasonable basis in law for concluding that the information in issue was exempt and that it had not been recalcitrant or otherwise engaged in obdurate behavior." <u>Weisberg v. U.S. Dep't of Justice</u>, 745 F.2d 1476, 1498 (D.C. Cir. 1984) (internal citation and punctuation omitted).  This factor is "intended to weed out those cases in which the government was recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." <u>Tax Analysts v. U.S. Dep't of Justice</u>, 965 F.2d 1092, 1097 (D.C. Cir. 1992) (internal citation and punctuation omitted).

This case proceeded in two distinct phases, turning on: (1) the FOIA privacy issue, and (2) the government's withholdings under FOIA Exemptions 5, 6, and 7.  <u>Accord</u> <u>Allen v. Dep't of Defense</u>, 713 F. Supp. 7, 12 (D.D.C. 1989) ("[A] number of … courts have divided the FOIA proceedings into two discrete phases: an initial phase where the plaintiff establishes its eligibility to receive all non-exempt documents followed by a second phase involving piecemeal disputes over specific exemptions claimed by defendant.").  As to the second phase, Plaintiff's fee petition does not contend that the government's withholdings under Exemptions 5, 6, and 7 lacked a reasonable basis in law.  Moreover, although Defendant's position articulated during the first phase did not ultimately prevail, Defendant had a reasonable legal basis for taking that position, and did not engage in recalcitrant or obdurate behavior.

Defendant's position was that: (a) the agencies had a colorable basis for relying on FOIA Exemptions 6 and 7(C) to deny Plaintiff access to the requested materials, based on a balancing

of the relevant individual privacy right against the public interest in disclosure, and (b) in light of

authority from this Circuit, the results of this balancing test, and limited agency resources, the

agencies had a reasonable legal basis not to search for the requested law enforcement records.

In its brief on the FOIA privacy issue, Defendant explained that, in responding to and

processing requests for information related to a third party, the general practice of the FBI,

EOUSA and the Criminal Division was to withhold such information unless the requester had

identified a public interest in disclosure that outweighed any privacy interests of the third party

or had submitted a proof of death or a privacy waiver.  See Def. MSJ at 1-9.  Defendant also

explained that the agencies had developed these policies to protect the privacy rights of third

parties – an important concern for Congress when it enacted FOIA – and that privacy concerns

are particularly acute when a FOIA requester seeks records about third parties from agencies

with law enforcement functions, where even the acknowledgement of such records could be

invasive of these third parties' privacy rights.  Id. at 9-21.

Because the agencies had relied on FOIA Exemptions 6 and 7(C) in denying Plaintiff

access to the requested materials, Defendant weighed the relevant individual privacy rights

against the public interest in disclosure, as required under these exemptions.  Def. MSJ at 10-20.

Defendant began by considering the individual privacy right at stake.  Id. at 13-17; see also Def.

Reply in Support of MSJ ("Def. Reply") at 4-12 [ECF No. 13].  As to this right, Defendant noted

that as with any individual, Representative Young maintained a strong privacy interest in

investigative records about him.  Def. MSJ at 15.  Defendant relied on D.C. Circuit case law

supporting this position.  See SafeCard Servs. v. SEC, 926 F.2d 1197, 1205 (D.C. Cir. 1991)

(people identified in criminal investigation reports have a substantial interest in keeping their

identities closed to the public, regardless of how they are characterized in the record); ACLU v.

8

U.S. Dep't of Justice, 698 F. Supp. 2d 163, 165 (D.D.C. 2010) (Exemption 7(C) "offers its greatest protection when disclosure would involve the privacy interests of individuals who were uncharged suspects of investigations or who were merely mentioned in records") (internal punctuation omitted).  Defendant also noted that though government officials like Representative Young might have a somewhat diminished privacy interest, they "do not surrender all rights to personal privacy when they accept a public appointment."  Def. MSJ at 15 (quoting Quinon v. FBI, 86 F.3d 1222, 1230 (D.C. Cir. 1996)).  Defendant further explained that a media report of Representative Young's acknowledgement of the closure of a Justice Department investigation did not obviate his privacy interest.  Def. MSJ at 16.  Defendant relied on Kimberlin v. Dep't of Justice, 139 F.3d 944 (D.C. Cir. 1998), which held that even where an Assistant U.S. Attorney had acknowledged to the press an investigation into his professional conduct, he maintained a cognizable privacy interest in avoiding the disclosure of the details of that investigation and of his misconduct and punishment, and also an interest in preventing speculative press reports of that misconduct from receiving official, authoritative confirmation.  Def. MSJ at 16; see Kimberlin, 139 F.3d at 950.  Further, Defendant considered the fact that Representative Young was never indicted, and that regardless of their identities, all individuals are presumed by law to be innocent of criminal offenses unless proven guilty.

Defendant next balanced Representative Young's privacy right against the public interest in disclosure.  Def. MSJ at 17-20; see also Def. Reply at 12-16.  Defendant underscored that the public interest at issue was the interest in official information that sheds light on an agency's performance of its statutory duties.  Id. at 18 (citing Quinon, 86 F.3d at 1231).  And Defendant responded to three arguments from Plaintiff about the nature of the public interest at stake.  First, responding to Plaintiff's argument that public disclosure of the requested records would bring to

light Representative Young's alleged criminal activities, Defendant explained that information about a public figure who is the subject of an investigation did not implicate a cognizable public interest under FOIA; rather, only the conduct of the agency possessing those records could implicate such an interest. Id. at 18-19. Defendant relied on case law from this Circuit to support this position. See id. Second, in response to Plaintiff's argument that the requested information would shed light on the Justice Department's decision not to prosecute Representative Young, Defendant noted that oblique references to information sought to "open[] up government action to the light of public scrutiny" have repeatedly been held insufficient by courts, and that a "mere desire to review how an agency is doing its job, coupled with allegations that it is not, does not create a public interest sufficient to override the privacy interests protected by Exemption 7(C)." Id. at 19 (quoting Judicial Watch v. DHS, 736 F. Supp. 2d 202, 211 (D.D.C. 2010), and McCutchen v. HHS, 30 F.3d 183, 188 (D.C. Cir. 1994)). Third, Defendant explained that to the extent Plaintiff was arguing that the public interest being asserted was showing that Justice Department officials acted negligently or otherwise improperly in their duties, that argument was meritless absent compelling evidence of illegal activity. Id. at 19-20 (citing cases). As a result, Defendant concluded that Plaintiff had failed to demonstrate a cognizable public interest sufficient to outweigh Representative Young's private interest. Id. at 20. And Defendant also responded to Plaintiff's counterarguments that it had demonstrated a cognizable, countervailing public interest. See Def. Reply at 12-16.

Finally, Defendant stated that the agencies' decision not to search for the requested law enforcement records was proper, given the results of the balancing test and limited agency resources. Def. MSJ at 20-21; see also Def. Reply at 16-17. Defendant cited case law from this Circuit supporting this position. See Lewis v. Dep't of Justice, 609 F. Supp. 2d 80, 85 (D.D.C.

2009) (when a plaintiff "has not demonstrated the public's entitlement to otherwise exempt third party information . . . whether defendant actually *searched* for records is immaterial . . . because that refusal deprived [plaintiff] of nothing to which he is entitled") (emphasis in original); Ogaju v. United States, 288 F.3d 448, 451 (D.C. Cir. 2002) (because third-party's privacy interest outweighed non-existent public interest, records were exempt from disclosure under Exemption 7(C); "Therefore, we need not consider whether the [agency] erred . . . by refusing to confirm or deny the existence of the records.  Right or wrong, that refusal deprives [plaintiff] of nothing to which he is entitled"), *vacated and remanded on other grounds*, 541 U.S. 970 (2004), *reinstated*, 378 F.3d 1115 (D.C. Cir. 2004).  Defendant also relied on case law upholding agency decisions refusing to confirm or deny the existence of responsive documents in the absence of a privacy waiver, proof of death, or identification of public interest.  See Def. MSJ at 21 (citing Barbosa v. DEA, 541 F. Supp. 2d 108 (D.D.C. 2008), and Robinson v. Att'y Gen, 534 F. Supp. 2d 72 (D.D.C. 2008)).

After carefully performing its own balance of the private and public interests, the Court reached a conclusion different from the position advanced by Defendant.  CREW, 840 F. Supp. 2d at 230-36.  Notably, however, the Court did not conclude that Defendant's position lacked a reasonable basis in law.  In fact, the Court agreed with several points made by Defendant: for example, that Representative Young retained a cognizable, albeit diminished, privacy interest; that ordinarily, anything that would associate a third party with a criminal investigation would establish that individual's privacy; that individuals have a strong interest in not being associated unwarrantedly with alleged criminal activity; and that this strong interest may be especially true for elected politicians.  Compare id. at 232-33 with Def. MSJ at 13-16.

Moreover, while the Court did note that the "usual practice" under FOIA is for agencies to submit <u>Vaughn</u> Indexes specifically identifying responsive documents withheld or redacted and the justification therefore, 840 F. Supp. 2d. at 229-30, the Court also stated: "It is true that under certain circumstances, often involving Exemptions 6 and 7(c), 'rules exempting certain categories of records from disclosure [have] sometimes permitted, even encouraged,' such categorical rules as 'a workable manner of meeting FOIA obligations." <u>Id.</u> at 230 (quoting <u>Nation Magazine, Wash. Bureau v. U.S. Customs Servs.</u>, 71 F.3d 885, 893 (D.C. Cir. 1995)). The Court explained that the D.C. Circuit "has made it clear that '[t]here are limits, though,'" to when such categorical rules are appropriate, specifically, "'when the range of circumstances included in the category 'characteristically support[s] an inference that the statutory requirements for exemption are satisfied. . .'" <u>Id.</u> at 230 (quoting <u>Nation Magazine</u>, 71 F.3d at 893 (citation and internal punctuation omitted)).  After examining the particular circumstances of the present case, the Court determined that these circumstances did not represent an instance in which such a categorical rule was appropriate.  <u>See id.</u> at 230-36.  But the Court did not find that Defendant's position on this issue lacked "any colorable or reasonable basis."  <u>Davy</u>, 550 F.3d at 1162.  And the D.C. Circuit has "emphasized that the government's position need not be correct to qualify as reasonable."  <u>Peter S. Herrick's Customs & Int'l Trade Newsletter v. U.S. Customs & Border Protection</u>, 2006 WL 3060012, at *9 (D.D.C. Oct. 26, 2006) (citing <u>Fenster</u>, 617 F.2d at 744). Indeed, the D.C. Circuit "has upheld the government's basis for resisting disclosure as reasonable even where the government's legal arguments had been rejected by a three-judge panel of that court and eight justices of the Supreme Court."  <u>Id.</u> (citing <u>Tax Analysts</u>, 965 F.2d at 1097).  It thus cannot be said that though Defendant's position on this issue did not prevail,

Defendant lacked a "colorable or reasonable basis for not disclosing the material until after [Plaintiff] filed suit." Davy, 550 F.3d at 1163.

Moreover, the purpose of the reasonable-basis requirement is "to weed out those cases in which the government was recalcitrant in its opposition to a valid claim or otherwise engaged in obdurate behavior." Tax Analysts, 965 F.2d at 1097; see also Weisberg, 745 F.2d at 1498 (this factor includes consideration of whether the government has been "recalcitrant or [has] otherwise engaged in obdurate behavior"). Plaintiff has not contended – nor could it – that the agencies' response to this lawsuit could be characterized as recalcitrant or obdurate. Following the Court's decision on the FOIA privacy issue on January 10, 2012, and the Court's clarification of the scope of its Order on March 12, 2012, the agencies released responsive materials to Plaintiff on April 19, April 23, and May 2, 2012, respectively. See Mem. Op. (June 12, 2013) at 4 [ECF No. 48]. The Court upheld the agencies' withholding decisions under Exemption 5, id. at 9-24, and directed EOUSA and the Criminal Division to provide additional explanatory information in supplemental Vaughn Indexes about their Exemption 6 and 7(C) withholdings. Id. at 30. Plaintiff did not challenge the supplemental Vaughn Indexes produced. This was not a case where a defendant sought to procrastinate or to resist disclosure based on a meritless exemption claim. See Nationwide Bldg. Maintenance, 559 F.2d at 711 (FOIA fee-award provision "was not enacted to provide a reward for any litigant who successfully forces the government to disclose information it wished to withhold. It had a more limited purpose to remove the incentive for administrative resistance to disclosure requests based not on the merits of exemption claims, but on the knowledge that many FOIA plaintiffs do not have the financial resources or economic incentives to pursue their requests through expensive litigation"). Therefore, an award of fees is not appropriate here. See id. at 712 n.34; Summers, 477 F. Supp. 2d at 63.

**II.      Alternatively, Any Award Should Be Severely Discounted.**

In any event, even if the Court were to conclude that Plaintiff is entitled to attorney's

fees, which it is not, Plaintiff is not entitled to the $75,160.00 sought.  An appropriate fee award

is the product of the hourly rate and the number of attorney hours reasonably expended on the

case.  See Hensley, 461 U.S. at 441.  Where the amount requested is deemed "outrageously

unreasonable," the Court may deny the request in "its entirety," "lest claimants feel

free to make 'unreasonable demands, knowing that the only unfavorable consequence of such

misconduct should be reduction of their fee to what they should have asked for in the first

place.'"  Envtl. Def. Fund, 1 F.3d at 1258 (citation omitted).  In a case of "less egregious

overbilling," the Court may "impose a lesser sanction such as awarding a fee below what a

'reasonable' fee would have been in order to discourage fee petitioners from submitting an

excessive request."  Id.  Such considerations compel that Plaintiff not recover the full amount

requested here.

**A.      The Hourly Rates Sought by Plaintiff Should Be Based on the Updated
Laffey Matrix Prepared by the U.S. Attorney's Office, as Previously
Requested by Plaintiff in at Least Two Recent FOIA Cases.**

If the Court decides to award Plaintiff fees, it should use the rates provided in the USAO

Laffey Matrix.  Plaintiff's suggestion that the Court use an alternative Laffey Matrix is

unpersuasive.  First, CREW has specifically endorsed the use of the USAO Laffey Matrix in

recent FOIA litigation to calculate hourly rates for fee awards.  Second, Plaintiff seeks an award

based on billing rates as to which Plaintiff has failed to show that it has actually billed or would

bill at comparable rates, or that the legal market supports these rates billed by attorneys working

for organizations of its size or performing this type of litigation.

The usual method of calculating a reasonable fee amount begins with consideration of the "initial estimate of a reasonable attorney's fee" – the so-called lodestar fee – which the Supreme Court has said "is properly calculated by multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate" based on "the prevailing market rates in the relevant community." Blum v. Stenson, 465 U.S. 886, 888, 896 (1984). "For public-interest or government lawyers who do not have customary billing rates, courts in this circuit have frequently employed the 'Laffey Matrix,' a schedule of fees based on years of attorney experience that was developed in Laffey v. Northwest Airlines, Inc., 572 F. Supp. 354 (D.D.C. 1983), rev'd on other grounds, 746 F.2d 4 (D.C. Cir. 1984)." Judicial Watch v. U.S. Dep't of Justice, 774 F. Supp. 2d 225, 232 (D.D.C. 2011).

In FOIA cases, courts in this Circuit frequently make use of the updated Laffey Matrix maintained by the Civil Division of the Office of the United States Attorney, which adjusts the matrix annually by changes in the U.S. Consumer Price Index for the Washington, D.C. area. See, e.g., Elec. Privacy Info. Ctr. ("EPIC") v. TSA, __ F. Supp. 2d __, 2013 WL 5620859, at *1 (D.D.C. Oct. 15, 2013); Nw. Coal. for Alts. to Pesticides v. EPA, 421 F. Supp. 2d 123, 129 (D.D.C. 2006). The time entries for which Plaintiff seeks a fee award range from March 31, 2011 to May 2, 2012. See Pl. Mot., Ex. I, ¶¶ 6-7 & Ex. J. Plaintiff represents that when the attorneys' time entries were made, the attorneys had 20+ years of relevant experience. See id., Ex. I, ¶ 2 & Ex. J, ¶ 2. Under the most recent updated Laffey Matrix,[2] the hourly rates for attorneys with 20+ years of relevant experience are:

---

[2] *Available at* http://www.justice.gov/usao/dc/divisions/Laffey_Matrix%202014.pdf.

| Time Period | Hourly Rate |
|---|---|
| June 1, 2010 – May 31, 2011 | $475.00 |
| June 1, 2011 – May 31, 2012 | $495.00 |
| June 1, 2012 – May 31, 2013 | $505.00 |
| June 1, 2013 – May 31, 2014 | $510.00 |

These rates represent an appropriate starting point for the calculation of any fee award in this FOIA case. Indeed, in at least two recent FOIA cases in this District, attorneys from CREW have specifically requested any fee award to be based on rates in the USAO Laffey Matrix. See CREW v. U.S. Dep't of Justice, No. 10-750 (D.D.C.), Pl. Mot. for Award of Attorneys' Fees and Costs (June 9, 2011), at 19 [ECF No. 7-1] (requesting fees based on hourly rates adopted from the USAO Laffey Matrix) (attached as Ex. 2); CREW v. U.S. Dep't of Justice, 2011 WL 5830746, at *2 (D.D.C. Nov. 21, 2011) (basing hourly rates for fee award to CREW attorneys on USAO Laffey Matrix); CREW v. DHS, 2010 WL 8971920, at *1 n.1 (D.D.C. Apr. 21, 2010) (noting that "CREW has used the prevailing market rates set by the United States Attorney's Office for the District of Columbia to calculate its hourly rate" for a FOIA fee petition).

In a reversal of position, Plaintiff now suggests instead that the Court should use an alternative Laffey Matrix utilizing higher billing rates. Pl. Mot. at 15-17.[3] Defendant is mindful that this Court made use of a different Laffey Matrix utilizing higher rates in Salazar v. Dist. of Columbia, 123 F. Supp. 2d 8 (D.D.C. 2000), and Smith v. Dist. of Columbia, 466 F. Supp. 2d 151 (D.D.C. 2006). However, that fact that the alternative Laffey Matrix might be appropriate in

---

[3] Plaintiff relies mainly on a declaration submitted by Michael Kavanaugh to support this suggestion. Pl. Mot., Ex. K. In response, Defendant respectfully submits a 2009 declaration from Dr. Laura A. Malowane, filed in Norden v. Clough, No. 05-1232, and a 2010 supplemental declaration filed in Heller v. Dist. of Columbia, Case No. 03-213, as Exhibit 3 hereto.

a subset of cases involving extensive pretrial litigation, trials on the merits, and appeals does not

mean that it should be applied in every case, particularly where the plaintiff has previously urged

the use of the USAO <u>Laffey</u> Matrix to calculate fee awards for previous FOIA cases.

Moreover, by contrast to this case, <u>Salazar</u> was a complex institutional-reform class

action regarding medical services for children eligible for Medicaid that began in 1993, resulted

in no less than thirty published and unpublished decisions from this Court and the D.C. Circuit

between 1996 and 2014, and involved three years of pretrial litigation, a trial on the merits, and

multiple appeals.  See <u>Salazar v. Dist. of Columbia</u>, 938 F. Supp. 926, 929 (D.D.C. 1996).

Similarly, <u>Smith</u> involved extensive pretrial litigation, including numerous depositions and

exchanges of written discovery, followed by a twelve-day jury trial and appeals.  466 F. Supp. 2d

at 153.  Additionally, the defendant in <u>Smith</u> did not challenge the use of the alternative <u>Laffey</u>

Matrix.  <u>Id.</u> at 156.  This case, by contrast, is a straightforward FOIA case.

For similar reasons, Plaintiff has misplaced its reliance on <u>Eley v. Dist. of Columbia</u>,

__ F. Supp. 2d __, 2013 WL 6092502 (D.D.C. Nov. 20, 2013).  <u>Eley</u> did not involve a fee award

under FOIA, but under the fees provision of the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. § 1415(i)(3)(B)(i)(I).  <u>See</u> 2013 WL 6092502, at *1.  And if IDEA case law

on fees is relevant here, then a significant factor in analyzing fee awards in such cases – the

degree of complexity of the case – counsels strongly here against using an alternative <u>Laffey</u>

Matrix with higher billing rates.  <u>See Gray v. Dist. of Columbia</u>, 779 F. Supp. 68, 73 (D.D.C.

2011) (declining to award prevailing IDEA plaintiff fees under <u>Laffey</u> matrix instead of lower

rates because, <u>inter alia</u>, "[w]ithout any evidence of the complexity of the administrative process,

the Court cannot make the appropriate independent ruling as to whether or not the hours claimed

are justified"); <u>Gardill v. Dist. of Columbia</u>, 930 F. Supp. 2d 35, 43 (D.D.C. 2013) ("Courts [in

IDEA cases] may look to the complexity of the case and use discretion to determine what rates are warranted.").

In short, a plaintiff seeking a fee award should not be automatically entitled to receive a fee award under an alternative <u>Laffey</u> Matrix with markedly higher billing rights.  Rather, whether a plaintiff merits such an award should be examined on a case-by-case basis.  And courts in this Circuit, while reserving the right to use the alternative <u>Laffey</u> Matrix in certain cases, have declined to apply that Matrix when determining fee awards in other cases, including FOIA cases.  Thus, in one FOIA case, <u>Queen Anne's Conservation Ass'n v. U.S. Dep't of State</u>, 800 F. Supp. 2d 195 (D.D.C. 2011), the Court decided that use of the USAO <u>Laffey</u> Matrix was more appropriate than the use of the alternative <u>Laffey</u> Matrix.  <u>Id.</u> at 200-01.  The Court specifically distinguished <u>Salazar</u>, noting that in that case, "the plaintiffs filed a class action suit which culminated in a seven-day bench trial," while in the FOIA case before the Court "the parties never appeared in court, and resolved the case by agreement within four months of the date on which it was commenced."  <u>Id.</u> at 200; <u>see also</u> <u>Negley v. FBI</u>, No. 03-2126 (D.D.C.), ECF Nos. 132, 133, 140 (calculating fee award in FOIA case based on USAO <u>Laffey</u> Matrix).

And like Plaintiff here, the plaintiff in <u>Heller v. Dist. of Columbia</u>, 832 F. Supp. 2d 32 (D.D.C. 2011), relied on, <u>inter alia</u>, a National Law Journal survey of rates charged by large law firms.  <u>Compare id.</u> at 45 <u>with</u> Pl. Mot. at 17.  But the <u>Heller</u> Court explained that such materials "fail to establish that plaintiff's requested rates are, in fact, the prevailing market rates for attorneys engaged in complex federal litigation outside of the 'big firm' context."  832 F. Supp. 2d at 45.  Because the National Law Journal survey cited in <u>Heller</u> "only examine[d] the rates of the nation's 250 largest law firms, which range in size from 392 to 1092 attorneys," the Court found this information "largely inapposite because none of plaintiff's attorneys practice at large

law firms; indeed, plaintiff's lead counsel is a principal at a two-partner law firm."  Id. at 45-46.

Similarly, the National Law Journal survey submitted by Plaintiff only included four large

Washington D.C. firms, ranging in size from 343 to 2,253 full-time attorneys.  Pl. Mot., Ex. L.

Notably absent from Plaintiff's fee petition is any evidence of actual billing rates charged

by attorneys working for CREW, or even for organizations of comparable size.  That evidentiary

gap is "significant because the market generally accepts higher rates from attorneys at firms with

more than 100 lawyers than from those at smaller firms – presumably because of their greater

resources and investments, such as attorneys, librarians, researchers, support staff, information

technology, and litigation services."  Heller, 832 F. Supp. 2d at 46-47 (citation and internal

punctuation omitted).  "[A]s a result of these overhead costs, courts have recognized that the size

of the firm representing a plaintiff seeking attorney's fees is a factor in determining a reasonable

attorney's fee."  Id. at 47 (citing cases) (citation and internal punctuation omitted); see, e.g.,

Saunders v. Salvation Army, 2007 WL 927529, at *3 (S.D.N.Y. March 27, 2007) (declining to

award large-firm rates to small non-profit organization, explaining that because "the Center does

not incur the same overhead costs that burden a large law firm . . . the rates charged by its

attorneys cannot approximate those charged by attorneys in large New York City law firms").

Moreover, as noted above, attorneys representing CREW in recent FOIA cases have specifically

requested that they be compensated at rates from the USAO Laffey Matrix.

Also absent from Plaintiff's fee petition is any evidence of rates of attorneys who engage

in the *type* of litigation at issue here – namely, FOIA litigation that does not typically involve

either extensive pretrial litigation (including depositions and written discovery) or bench or jury

trials.  To demonstrate that the hourly rates billed are reasonable, a FOIA plaintiff must submit,

among other things, specific evidence that establishes both (1) the hourly rate "prevailing in the

community for similar work" and (2) the billing attorney's "actual billing practice during the relevant time period." Nat'l Ass'n of Concerned Veterans v. Sec. of Def., 675 F.2d 1319, 1325-26 (D.C. Cir. 1982). Moreover, lead counsel for Plaintiff concedes that Plaintiff "agreed to pay him flat fees for specific stages of the litigation." Pl. Mot., Ex. I, ¶ 4. While counsel states that "it was understood" that those fees "did not reflect the market rates for my work to which I would be entitled if [Plaintiff] prevailed in this matter," that simply underscores the fact that Plaintiff has failed to present evidence of the rates that the market pays for the type of litigation involved here. This is not said to disparage Plaintiff's counsel nor to cast aspersions on the nature of FOIA litigation. It is to say that Plaintiff has not shown that the enhanced hourly rates of the alternative Laffey Matrix reflect a reasonable hourly rate for the type of litigation at issue here. See Heller, 832 F. Supp. 2d at 46 (declining to use alternative Laffey Matrix because, inter alia, "[a]bsent from plaintiff's evidentiary record are the rates typically charged by attorneys at small or boutique law firms in the District of Columbia who perform the *type* of complex federal litigation at issue in this case") (emphasis added).

In sum, a plaintiff seeking a fee award is not entitled to use of the alternative Laffey Matrix; rather, the propriety of its use should be analyzed on a case-by-case basis. In prior FOIA litigation, CREW has specifically requested that fee awards be based on the hourly rates in the USAO Laffey Matrix, and thus should not now be heard to contend that these rates are not reasonable. Moreover, Plaintiff has not demonstrated that the higher rates in the alternative Laffey Matrix reflect what would be a prevailing market rate for attorneys who working on this type of litigation in organizations of comparable size. Thus, if the Court decides to award Plaintiff fees, it should use the rates provided in the USAO Laffey Matrix.

**B.      Any Fee Award Should Be Reduced Because Plaintiff Failed to Exercise Billing Judgment.**

**1.      Plaintiff's Reconstructed Time Records Are Inadequate to Establish the Hours Reasonably Expended on This Case.**

The D.C. Circuit "has been very explicit about what documentation is necessary to recover attorney fees." Weisberg v. Webster, 749 F.2d 864, 872 (D.C. Cir. 1984). "Casual after-the-fact estimates of time expended on a case are insufficient to support an award of attorneys' fees." Concerned Veterans, 675 F.2d at 1327. Thus, "[a]ttorneys who anticipate making a fee application *must* maintain contemporaneous, complete and standardized time records which accurately reflect the work done by each attorney." Weisberg, 749 F.2d at 873 (emphasis added); see also Concerned Veterans, 675 F.2d at 1327 (noting that "any attorney who hopes to obtain an allowance from the court should keep accurate and current records of work done and time spent" (internal quotations omitted)). When, as here, an attorney does not, disallowance of attorney's fees "serve[s] as a means of encouraging counsel to maintain adequate records and submit reasonable, carefully calculated and conscientiously measured claims." Jordan v. U.S. Dep't of Justice, 691 F.2d 514, 518 (D.C. Cir. 1982) (internal quotations omitted). In addition, "courts in this District and others have often required that attorneys bill in ten-minute or six-minute increments and have reduced attorneys' fees on the grounds that billing in increments smaller than quarter-hours is more accurate." CREW v. U.S. Dep't of Justice, 825 F. Supp. 2d 226, 230 (D.D.C. 2011).

Plaintiff's counsel Anne L. Weismann failed to maintain contemporaneous time records describing the work performed on this case. Instead, counsel kept "daily time sheets" and "separate notes" that she "maintain[s] on individual cases." Pl. Mot., Ex. J, ¶ 4. Therefore, to determine counsel's time "for purposes of recovering [] fees in this matter," Plaintiff's counsel

allegedly "reviewed those records." Id. But those time sheets were not submitted with the fee petition, and the post hoc reconstruction provided in Exhibit J to Plaintiff's motion does not satisfy the standard in the D.C. Circuit. See CREW, 825 F. Supp. 2d at 230-31 (finding such a reconstruction inadequate). Moreover, counsel's declaration fails to state the increments of time in which the daily time sheets she maintained were kept, see Pl. Mot., Ex. J, and without viewing the actual time sheets, it is impossible to know.[4] The issue is important because "courts in this District and others have often required that attorneys bill in ten-minute or six-minute increments and have reduced attorneys' fees on the grounds that billing in increments smaller than quarter-hours is more accurate." CREW, 825 F. Supp. 2d at 230 (citing cases) (citations and internal punctuation omitted). Nor is it possible to determine without such an examination whether the daily time sheets itemized the specific tasks for which Plaintiff's counsel billed time in this case. Cf. id. at 230 (Plaintiff's counsel's "daily time sheets" indicated time "spent on specific cases, but d[id] not itemize the specific tasks . . . performed for each of those cases"). And this Court specifically admonished CREW in a prior case that "[i]f CREW wishes to receive unreduced fee awards in the future, moreover, the Court is confident that its counsel will maintain better contemporaneous records and record their time in more appropriate increments." Id. at 231.

In light of Plaintiff's failure to heed this warning, the Court should disallow the 10.85 hours representing time entries for which fees are sought by Ms. Weismann. See Blackman v. Dist. of Columbia, 59 F. Supp. 2d 37, 44 n.5 (D.D.C. 1999) ("In the future, the Court will not award fees where plaintiffs' counsel has not calculated his time in tenth-hour increments.").[5]

---

[4] Although Plaintiff's counsel represents that "since October [2013], CREW has implemented an electronic time keeping system specifically for litigation," Pl. Mot., Ex. J, ¶ 4, for attorney Anne L. Weismann, all but three time entries in December 2013 (for "fees on fees") were for time billed before October 2013. See id. And in any event, Plaintiff's counsel did not supply contemporaneous records reflecting these later time entries.

[5] This is especially true because this was a straightforward FOIA case that did not require time to be expended by more than one attorney. Courts should examine with skepticism claims that several lawyers were needed to perform

2. **Plaintiff Should Not Recover for Time Spent During the Administrative Phase.**

This Court has held that "FOIA does not authorize fees for work performed at the administrative stage." Nw. Coalition for Alts. to Pesticides v. Browner, 965 F. Supp. 59, 65 (D.D.C. 1997); accord Queen Anne's Conservation Ass'n, 800 F. Supp. 2d at 201. Accordingly, Plaintiff should not be permitted to recover for the 2.3 hours billed for "review[ing] the administrative record" on March 31, 2011, which occurred before the complaint was filed in this case on April 20, 2011.

3. **Plaintiff Should Not Recover Attorney's Fees for Entries Representing Block Billing.**

The Court should also deny recovery for entries in which Plaintiff grouped tasks together, a practice known as "block billing," making it impossible to determine the amount of time spent on any particular task. See Role Models Am. v. Brownlee, 353 F.3d 962, 970-71 (D.C. Cir. 2004) (time records provided by plaintiff did not permit court to "determine with a high degree of certainty that such hours were actually and reasonably expended" where, inter alia, "many time records lump together multiple tasks, making it impossible to evaluate their reasonableness") (citing In re Olson, 884 F.2d 1415, 1428-29 (D.C. Cir. 1989) (per curiam)) internal punctuation omitted); accord Fabi Constr. Co. v. Sec'y of Labor, 541 F.3d 407, 410-12 (D.C. Cir. 2008); Nat'l Law Ctr. on Homelessness & Poverty v. U.S. Dep't of Veterans Affairs, __ F. Supp. 2d __, 2013 WL 6654344, at *4-5 (D.D.C. Dec. 18, 2013); McKesson Corp. v.

---

a task, and should deny compensation for such needless duplication. Trimper v. City of Norfolk, 58 F.3d 68, 76-77 (4th Cir. 1995) (district court should scrutinize fee petitions for duplicative billing when multiple lawyers seek fees.); Lipsett v. Blanco, 975 F.2d 934, 938 (1st Cir. 1992) ("A trial court should ordinarily greet a claim that several lawyers were required to perform a single set of tasks with healthy skepticism."); Copeland v. Marshall, 641 F.2d 880, 891 (D.C. Cir. 1980) (holding "[if] three attorneys are present at a hearing when one would suffice, compensation should be denied for the excess time."); Aevote Corp. v. AE Tech Co., 2013 WL 5324787, at *3 (D. Nev. Sept. 20, 2013) ("Billed time that includes unnecessary duplication of effort should be excluded from the lodestar.").

Islamic Republic of Iran, 935 F. Supp. 2d 34, 45 (D.D.C. 2013); Coleman v. Dist. of Columbia,

2007 WL 1307834, at *7 (D.D.C. May 3, 2007).  This is particularly the case when the block

billing includes "consultations with co-counsel" because, as explained above, the involvement of

more than one attorney was not necessary in this case.  Defendant has eliminated fees sought for

block-billed entries (or, in some instances, reduced the time sought for such entries.)

> **4.    Plaintiff Should Not Recover Attorney's Fees for Reviewing
> Documents Produced in Response to Its FOIA Request.**

The Court should also deny recovery for Plaintiff's time reviewing documents it

requested and obtained because that would constitute an impermissibly broad reading of the

limited waiver of sovereign immunity in FOIA's fee provision.  See Kennedy v. Andrus, 459 F.

Supp. 240, 242 (D.D.C. 1978).  Although "[t]he federal government may waive its sovereign

immunity by statute," such a waiver "'must be unequivocally expressed in statutory text.'"

Webman v. Fed. Bureau of Prisons, 441 F.3d 1022, 1025 (D.C. Cir. 2006) (quoting Lane v. Peña,

518 U.S. 187, 192 (1996)).  Moreover, "[c]ourts must strictly construe any waiver of

sovereign immunity, in terms of its scope, in favor of the sovereign."  Id. (internal quotation

marks and citations omitted).  Thus, "an express waiver is required before attorneys' fees can be

assessed against the federal government."  Kennedy, 459 F. Supp. at 242.  The waiver of

sovereign immunity in FOIA's attorney's fee provision is limited to "fees and costs incurred in

*litigating* a case brought pursuant to the FOIA."  U.S. Dep't of Justice, Office of Information

Policy, Dep't of Justice Guide to the Freedom of Information Act 835 (2009) (emphasis in

original); 5 U.S.C. § 552(a)(4)(E)(i) (authorizing a court to award "attorney fees and other

*litigation* costs reasonably incurred in any case" (emphasis added)); see also N.Y.C. Apparel

F.Z.E. v. U.S. Customs & Border Prot. Bureau, 563 F. Supp. 2d 217, 226-27 (D.D.C. 2008)

(construing FOIA attorney's fee provision narrowly out of concern that a broader construction

would impermissibly go beyond the scope of Congress's explicit waiver of sovereign immunity).

Thus, fees and costs may only be assessed for services rendered "in connection with litigation."

Associated Gen. Contractors v. EPA, 488 F. Supp. 861, 864 (D. Nev. 1980).

Consistent with the Court's obligation to construe FOIA's waiver of sovereign immunity

narrowly, FOIA's fee provision cannot be construed to require compensating Plaintiff for how it

makes use of the records it requested and obtained. See CREW, 825 F. Supp. 2d at 231 ("The

Court agrees with DOJ that Plaintiff is not entitled to recover for time spent reviewing the

documents it instituted this lawsuit to obtain.").  The Court should thus award no fees for

Plaintiff's April 20, 2012 entry ("Review EOUSA's amended *Vaughn* index and consultations

with co-counsel") or May 2, 2012 entry ("Review DOJ released material and consultations with

co-counsel").  See CREW, 825 F. Supp. 2d at 231 ("The Court finds, therefore, that CREW

should not recover the $3,325 it claims for reviewing [released agency] documents and the draft

Vaughn index.").

**5.      The Vast Majority of the Remaining Time Entries Reflect Overbilling, and Should Be Reduced.**

Plaintiff has the burden of demonstrating the reasonableness of its request and that it has

not overbilled the government – a burden not met here.  See Hensley, 461 U.S. at 437 (noting

that the plaintiff "bears the burden of . . . documenting the appropriate hours expended and

hourly rates").  The D.C. Circuit "regard[s] overbilling the government as a serious

transgression, damaging to the public fisc and violative of the trust reposed in each member of

the bar."  Envtl. Def. Fund, 1 F.3d at 1260.  It is "irrelevant" that in this particular case the award

would enrich a non-profit organization because "[t]here is simply no excuse for . . . billing the

Government for unnecessary legal services." Id.

Even if overbilling is not so "outrageously unreasonable" as to justify denial of a fee award in its entirety, courts may impose a lesser sanction in cases involving "less egregious overbilling" such as "awarding a fee below what a 'reasonable' fee would have been in order to discourage fee petitioners from submitting an excessive request."  Envtl. Def. Fund, 1 F.3d at 1258.  Where Plaintiff's fee petition includes time entries demonstrating overbilling, the Court should accordingly reduce any fee awarded.

For the simple task of drafting and filing of a 5-page complaint with a single cause of action, Plaintiff unreasonably billed 3.7 hours in April 2011.  Any award should be reduced to 1.2 hours.  Similarly, Plaintiff's review of a 3½ page Answer, for which Plaintiff unreasonably billed 0.6 hours, should be reduced to 0.1 hours.

Plaintiff did not reasonably bill 2.2 hours for attending the brief initial scheduling conference on July 5, 2011, and for consulting with Ms. Weismann (which, in any event, represents block billing).  Any award should be reduced to 1 hour.

Plaintiff's August 9, 2011 entry for reviewing Defendant's initial summary judgment motion on a single issue – the FOIA privacy issue – should be reduced from 2.4 hours to 1 hour.  Though many of the exhibits to the motion were lengthy, a full 74 pages – representing over half of the total length of the motion plus exhibits – were already familiar to Plaintiff, as they consisted of Plaintiff's FOIA requests and correspondence Plaintiff had received from the agencies.  See ECF No. 10.  Moreover, this entry represents block billing, as it also includes "consultations with co-counsel."

And although legal research forms an indispensable part of the briefing process, it is not reasonable to seek an award for a total of 17.9 hours (Aug. 22 – 25, 2011) for legal research for Plaintiff's 18-page opening brief on a single issue – the FOIA privacy issue.  See ECF No. 12.  It

is plainly inconsistent to claim sufficient expertise in the law to justify a generous billing rate, while at the same time charging the government for such a significant amount of time spent researching a single issue of FOIA law.  Cf. Skaff v. Le Meridien, 2008 WL 4346792, at *11 (C.D. Cal. Sept. 16, 2008) ("[T]he knife is double-edged.  [Plaintiffs'] counsel cannot claim expertise in this area, thus justifying a substantial hourly rate, and at the same time obtain compensation for a large amount of attorney time to conduct legal research in basic areas of disabled access law.").  Plaintiff's failure to exercise billing judgment here should result in a reduction of any fees awarded to 4 hours.  Similarly, 11.5 hours is not a reasonable amount of time expended in drafting and filing such a motion (Sept 1 – 6, 2011), and Plaintiff's lack of billing judgment should result in a reduction to 5 hours.

Plaintiff's September 19, 2011 entry of 2.7 hours for reviewing Defendant's 17-page closing brief on the FOIA privacy issue is also unreasonable.  It should be reduced to at most 1 hour.  Similarly, Plaintiff unreasonably billed for 13.4 hours in September 2011 for researching, drafting, and filing an 11½ page reply brief on a single legal issue – the FOIA privacy issue. This overbilling should be penalized, and Plaintiff should recover no more than 4 hours for this task.  Finally, because it was not necessary to the advancement of this litigation to file a response to a notice of supplemental authority by Defendant, Plaintiff should not be compensated for the 1.3 hours billed for this task.

> **6.**    **Additionally, and in the Alternative, the Court Should Discount the Entire Award by at Least 20% in Light of the Reasonableness of Defendant's Withholding Decisions.**

As explained above, see supra part I, Defendant had a reasonable basis in law for its withholding decisions.  Thus, if the Court does decide to award Plaintiff fees in this case, it should reduce the amount of any award by at least 20% to reflect the fact that at the time the

government's withholding decisions were made, those decisions were reasonable, and had a substantial basis in governing law.  See, e.g., Education-Instruccion, Inc. v. HUD, 87 F.R.D. 112, 116-17 (D. Mass. 1980) (declining to award attorney fees and costs for time spent by plaintiff on issue as to which defendant had reasonable basis for claiming FOIA exemption), aff'd, 649 F.2d 4 (1st Cir. 1981).

> **7.    Plaintiff Cannot Show Whether Its Payment of $1,050.00 in Costs for Compensating a Declarant Was Reasonable Without Further Explanation.**

Plaintiff seeks recovery of $1,050.00 in costs for paying a declarant to prepare a declaration.  See Pl. Mot., Ex. I, ¶ 8 (asserting that Plaintiff incurred $1,050 for "fee for expert economist").  It is impossible to determine whether this represents a reasonable cost without additional information.  For example, if the declarant billed Plaintiff on an hourly rate, it would be useful to know the declarant's hourly rate and the number of hours he expended preparing his declaration.  Moreover, it is not clear whether this expense was incurred before Defendant made its December 6, 2013 Offer of Judgment to Plaintiff.  See infra II.C.4.  Because Plaintiff bears the burden of showing that any costs it incurred were reasonable, Plaintiff should not recover $1,050.00 in costs without such additional explanation.

> **C.    Any "Fees on Fees" Awarded Should Be Severely Reduced.**

In addition to claiming fees for litigating the merits of this case, Plaintiff also seeks recovery for "fees on fees."  The Court should decline to permit such recovery or, at the very least, should reduce the amount of "fees on fees" to take into account reductions that the Court makes to Plaintiff's fee award.  Moreover, the Court should deny Plaintiff *all* fees incurred after Defendant served its Offer of Judgment under Rule 68, including any fees incurred in connection with this motion.

### 1.    The Court Should Decline to Award "Fees on Fees."

Although "fees on fees" may be awarded in the Court's discretion, courts must review

such requests carefully.  See, e.g., Judicial Watch v. U.S. Dep't of Justice, 878 F. Supp. 2d 225,

240 (D.D.C. 2012) ("Courts, therefore, have an obligation to scrutinize the hours spent preparing

the fee petitions to insure that the total is reasonable and that it does not represent a windfall for

the attorneys.") (quotation omitted).  As noted above, Plaintiff's request for fees on the merits

suffers from a number of defects.  The Court should thus, in its discretion, decline to award "fees

on fees" in this case.

Awarding "fees on fees" despite the numerous problems with its request would

encourage future FOIA plaintiffs to litigate rather than settle attorney's fees disputes, driving up

the amount of fee litigation before the Court.  Future litigants could seek unreasonable attorney's

fee amounts, and then proceed to litigate the issue of fees, comfortable with the knowledge that

any reduction in the attorney's fee amount requested on the merits would be more than made up

in "fees on fees."  This is not what FOIA contemplates, and it should not be allowed by the

Court.  The need to rein in excessive requests is all the more critical in a time of reduced

budgets.  Cf. Perdue v. Kenny A. ex rel. Winn, 130 S.Ct. 1662, 1677 (2010) ("[T]he fees are paid

in effect by state and local taxpayers, and because state and local governments have limited

budgets, money that is used to pay attorney's fees is money that cannot be used for programs that

provide vital public services.").

### 2.    Any "Fees on Fees" Award Should Be Reduced Because of Overbilling.

If the Court does decide to grant Plaintiff "fees on fees," any such award should be

significantly reduced because both the overall amount sought by Plaintiff and specific time

entries demonstrate overbilling by Plaintiff.   Initially, in light of the frequency with which

Case 1:11-cv-00754-GK   Document 57   Filed 02/12/14   Page 33 of 38

Plaintiff engages in FOIA litigation, it is reasonable to expect that the task of preparing petitions

for fee awards is a task that attorneys representing Plaintiff engage in quite regularly. Given this

reasonable assumption, it is not reasonable for Plaintiff to seek reimbursement for a total of 23.1

hours for preparing a fee petition. This is especially true because 23.1 hours represents over *one-third* (34%) of the total hours for which Plaintiff's counsel is seeking a merits award (67.5

hours). This total figure suggests that Plaintiff did not exercise sound billing judgment.

Moreover, individual time entries also suggest overbilling by Plaintiff. For instance,

billing 1.1 hours on Dec. 10, 2013 for researching the basic issue of Plaintiff's eligibility for a

fee award (a discussion taking up barely more than a page of Plaintiff's fee motion) is not

reasonable, and should be reduced to 0.5 hours at most. Similarly, billing 1.6 hours for

researching the single issue of <u>Laffey</u> Matrix rates on December 4 and 6, 2013 is unreasonable

and should be cut in half to 0.8 hours. The task of "[l]ocat[ing] news coverage re disclosures"

should involve only a quick search with an Internet search engine: the request for 0.8 hours for

this simple task should thus be reduced to 0.3. The use of block billing in entries such as a

December 6, 2013 entry for "Call w/co-counsel; email to expert" and a December 10, 2013 entry

for "Research re Laffey rates; review expert's declaratio [sic]" makes it impossible to evaluate

the reasonableness of the time expended. These entries should thus be excluded from any fee

award. Moreover, in light of the frequency with which Plaintiff engages in FOIA litigation, it is

not reasonable to bill for 13 hours (Dec. 10-13, 2013) for drafting a fee petition. This overbilling

should be penalized, and Plaintiff should recover no more than 5 hours for this task. Another

instance of block billing (Dec. 10, 2013) for "Research re *Laffey* rates; review expert's declaratio

[sic]," should be reduced by 50%, from 1.2 to 0.6 hours. Finally two entries reflecting

overbilling (1.6 hours on December 18, 2013 for "[f]inalizing [a] declaration and motion" and

30

0.8 hours on December 20, 2013 for "[p]reparing a motion for filing") should each be reduced by 50%, to 0.8 hours and 0.4 hours, respectively.

### 3.   Additionally, and in the Alternative, "Fees On Fees" Should Be Reduced by at Least 20%.

Additionally, and in the alternatively, if the Court does choose to grant Plaintiff "fees on fees," such an award should be reduced by at least 20%.  See Comm'r, INS v. Jean, 496 U.S. 154, 163 n.10 (1990) ("[F]ees for fee litigation should be excluded to the extent that the applicant ultimately fails to prevail in such litigation."); EPIC v. DHS, __ F. Supp. 2d __, 2013 WL 5620891, at *3 (D.D.C. Oct. 15, 2013) ("This Court will therefore award EPIC the same percentage of fees for fee litigation as it does for fees on the merits."); Judicial Watch, 878 F. Supp. 2d at 241 (after finding that plaintiff was entitled to only 5.3% of fees sought for litigating the merits, awarding plaintiff the same percentage of the "fees on fees" plaintiff sought); Tequila Centinela, S.A. de C.V. v. Bacardi & Co., 248 F.R.D. 64, 72 (D.D.C. 2008) (non-FOIA) ("The Court finds that a reduction of hours spent preparing the fee request in proportion to the time excluded by the Court for preparing the motion to compel is an appropriate method to determine attorneys' fees in this case."); Nat'l Veterans Legal Servs. Program v. U.S. Dep't of Veterans Affairs, 1999 WL 33740260, at *5-6 (D.D.C. Apr. 13, 1998) (finding that an award of "fees on fees" should be reduced by the amount of time spent unsuccessfully defending hours eliminated by the court).

As set forth above, see supra II.B.6, because Defendant had a reasonable basis in law for its withholdings decisions, the Court should reduce Plaintiff's award of fees by at least 20%.  If the Court reduces Plaintiff's award of fees on the merits, it should also reduce the award of "fees on fees" by the same percentage.  See Judicial Watch, 878 F. Supp. 2d at 240 (reducing "fees on fees" commensurate with the Court's reduction of its merits fee award).  Without a reduction in

the amount of "fees on fees" commensurate with the reduction of fees on the merits, FOIA plaintiffs will have a strong incentive to litigate inflated fee petitions (after first demanding unreasonable settlements from the agencies), and recover through "fees on fees" what they cannot obtain through fees on the merits.

> **4.    Because Defendant Served a Rule 68 Offer of Judgment on December 6, 2013, Defendant Requests that the Court Divide Any Fee Award into Fees Incurred Until and After that Date.**

Under Rule 68, if an offeree prevails but recovers less than the amount that was offered, the offeree cannot recover any costs incurred after the offer.  See Tunison v. Cont'l Airlines Corp., 162 F.3d 1187, 1192-93 (D.C. Cir. 1998); B.L. Through Lax v. Dist. of Columbia, 517 F. Supp. 2d 57, 60 (D.D.C. 2007); Wright & Miller, Federal Practice and Procedure, § 3006.  The Supreme Court has held that such "costs" include attorney's fees if the relevant fee-shifting statute defines "costs" to include attorney's fees.  See Marek v. Chesny, 473 U.S. 1, 9 (1985). And FOIA does include attorney's fees as part of its definition of costs.  See 5 U.S.C. § 552(a)(4)(E) (authorizing award of "attorney fees and *other* litigation costs") (emphasis added); Marek, 473 U.S. at 44 (Brennan, J., dissenting) (listing FOIA as a statute in which attorney's fees are included as costs).

For the purpose of determining whether a judgment for attorneys' fees is, or is not, more favorable than an unaccepted Offer of Judgment, the point of comparison is the court's determination of the amount of fees reasonably incurred prior to the Offer of Judgment.  See Marek, 473 U.S. at 7 ("[P]ost-offer costs merely offset part of the expense of continuing the litigation . . . and should not be included in the calculus"); Goos v. Nat'l Ass'n of Realtors, 68 F.3d 1380, 1382 (D.C. Cir. 1995); EPIC, __ F. Supp. 2d __, 2013 WL 5620891, at *5. Defendant served an Offer of Judgment on Plaintiff on December 6, 2013 pursuant to Fed. R.

Civ. P. 68.  This Offer of Judgment was tendered by Defendant in a good-faith attempt to settle this litigation without burdening the Court with fee litigation.  Plaintiff chose not to accept this offer within 14 days of service.

At this time, unless requested to do so by the Court, Defendant is not disclosing the amount of its Offer of Judgment out of concern that it could influence improperly the Court's factfinding or be construed as a concession by Defendant that the amount specified in the Offer represents a reasonable award.  Rather, Defendant respectfully requests that if the Court finds Plaintiff to be entitled to attorney's fees, the Court should divide such fees into two categories: those incurred until December 6, 2013, and those incurred after that date, and that the Court refrain from entering final judgment for any amount of attorneys' fees immediately.[6]  See EPIC, __ F. Supp. 2d __, 2013 WL 5620891, at *5-6 (performing similar division).  Defendant will then determine whether the Offer of Judgment is greater or less than any pre-Offer expenses awarded to Plaintiff, and will expeditiously either file the Offer (and a request to deny any fees subsequent to the Offer), or will file a Notice that the Offer did not exceed Plaintiff's pre-Offer expenses.

**D.      Proposed Calculation of Fee and Cost Awards**

Consistent with the arguments outlined above, and as detailed in Exhibit 1 attached hereto, Defendant proposes the following calculation of Plaintiff's reasonable fees and costs:

| Fees and Expenses Incurred Through December 6, 2013 | |
| --- | --- |
| Fees | $9,342.00 |
| Expenses | + $  500.00 |

---

[6] In its proposed calculation below, and its separate exhibit reflecting the total breakdown of fees and expenses sought by Plaintiff, Defendant has divided its proposed fees into those incurred until and after December 6, 2013.

| Subtotal | $9,842.00 |
|---|---|
| Discount of 20% | - $1,968.40 |
| **Total** | **$7,873.60** |

| Fees and Expenses Incurred After December 6, 2013 | |
|---|---|
| Fees | $3,927.00 |
| Expenses | $       0 |
| Subtotal | $3,927.00 |
| Discount of 20% | - $   846.60 |
| **Total** | **$3,386.40** |

## CONCLUSION

Based on the foregoing, Defendant respectfully requests that the Court deny Plaintiff's fee petition in its entirety because Plaintiff has failed to demonstrate its entitlement to an award of fees.  Alternatively, to the extent that the Court deems Plaintiff entitled to some attorneys' fees Defendant requests that the overall award be limited to $7,873.60 in fees and costs prior to Defendant's Dec. 6, 2013 Offer of Judgment, and to $3,386.40 in fees and costs after the Offer of Judgment.

Dated: February 12, 2014

Respectfully submitted,

KATHLEEN R. HARTNETT
Deputy Assistant Attorney General

ELIZABETH J. SHAPIRO
Deputy Branch Director
U.S. Department of Justice
Civil Division, Federal Programs Branch

 /s/ Daniel Riess
DANIEL RIESS
Trial Attorney
U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C. 20044
Telephone:     (202) 353-3098
Fax:              (202) 616-8460

*Counsel for Defendant*